No. 54,902

No. 54,903

STATE OF KANSAS, *Appellee,* v. TOM A. DUNN and GARY V. FRENCH, *Appellants.*

(662 P.2d 1286)

Opinion filed April 29, 1983.

*Timothy J. Turner,* of Prairie Village, argued the cause and was on the brief for the appellants.

*Paul J. Morrison,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Dennis W. Moore,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is a criminal action in which Tom A. Dunn and Gary V. French (defendants-appellants) appeal convictions for possession with intent to deliver drug paraphernalia, in violation of the Drug Paraphernalia Act, K.S.A. 1982 Supp. 65-4150 *et seq.* On appeal the defendants contend (1) the trial

court erred in refusing to suppress evidence seized pursuant to a search warrant, (2) the Act is unconstitutionally vague, and (3) there was insufficient evidence to support the trial court's conclusion that the items seized were drug paraphernalia or that the defendants had the intent to sell the items as drug paraphernalia and reasonably should have known they would be used for such purposes.

The defendants own and operate a retail establishment named "The Choosey Beggar" in Overland Park, Johnson County, Kansas. In addition to clothing and clothing accessories, the store offered for sale various glass and plastic water pipes, some of which were referred to as "bongs"; small pipes made of metal, wood, glass, plastic and ceramic of different colors, some containing small mesh-like screens; "cocaine kits" consisting of a mirror, razor blade, small spoon and vial; various small spoons and vials; small clips of various designs, commonly referred to as "roach" clips; rolling papers, snuff wrappers and envelopes; cigarette cases and "concert kits" containing a small pipe, small screens, pipe cleaners, plastic bag, matches, rolling papers and a roach clip. Some of these items were decorated with marijuana leaf designs. Many items bore small stickers stating "Not for sale to minors" and "Not intended for illegal use."

On November 13, 1981, a search warrant for The Choosey Beggar was issued and many of the above-described items were seized. Subsequently the defendants were charged with possession of drug paraphernalia with intent to deliver for illegal use with controlled substances in violation of K.S.A. 1982 Supp. 65-4153. The defendants unsuccessfully moved to quash the search warrant and suppress the evidence seized thereunder. After hearing evidence presented by both sides, including expert testimony concerning the use of the seized items in evidence, the court found the defendants guilty and imposed a $2,500 fine and 90-day jail sentence on each.

The defendants first contend the affidavit in support of the search warrant was insufficient to establish probable cause that a crime had been committed. The affidavit for the search warrant stated the following facts:

"On November 12, 1981 at approximately 3:00 p.m., Overland Park Police Officers Faddis and Mann entered the Choosey Beggar retail store located at 7619 Metcalf in Overland Park, Johnson County, Kansas. The Choosey Beggar is a retail store open to the public. At the east end of the store along the north and

south walls the officers observed the following merchandise for sale: several glass and plastic water bong pipes, several small pipes made of metal, wood, glass, stone, plastic and ceramic of different colors, some emblazoned with a marijuana leaf design, cocaine cutting or 'snuff' kits, roach clips of various designs, cocaine spoons and vials, 'sno-seel' envelopes for storing & concealing controlled substances, various carburetor and/or chamber pipes and tubes resembling rolled-up U.S. currency used for ingesting or inhaling controlled substances. The officers believe the above mentioned items are drug paraphernalia as defined in Chapter 140 of the 1981 Kansas Session Laws."

Chapter 140 of the 1981 Session Laws was codified in K.S.A. 1982 Supp. 65-4150 *et seq.* K.S.A. 1982 Supp. 65-4153 provides in pertinent part:

"(*a*) No person shall deliver, possess with intent to deliver, manufacture with intent to deliver or cause to be delivered within this state:

. . . .

"(2) any drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to . . . store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a controlled substance in violation of the uniform controlled substances act."

The definition of drug paraphernalia and groups of specific objects which may constitute drug paraphernalia if used for a prohibited purpose are set forth in detail in 65-4150(*c*). These include:

"(9) Capsules, balloons, envelopes and other containers used or intended for use in packaging small quantities of controlled substances.

"(10) Containers and other objects used or intended for use in storing or concealing controlled substances.

. . . .

"(12) Objects used or intended for use in ingesting, inhaling or otherwise introducing marihuana, cocaine, hashish, or hashish oil into the human body, such as:

"(A) Metal, wooden, acrylic, glass, stone, plastic or ceramic pipes with or without screens, permanent screens, hashish heads or punctured metal bowls;

"(B) water pipes;

"(C) carburetion tubes and devices;

"(D) smoking and carburetion masks;

"(E) roach clips (objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand);

"(F) miniature cocaine spoons and cocaine vials;

"(G) chamber pipes;

"(H) carburetor pipes;

"(I) electric pipes;

"(J) air-driven pipes;

"(K) chillums;

"(L) bongs; and

"(M) ice pipes or chillers."

In *Kansas Retail Trade Co-op. v. Stephan,* 522 F. Supp. 632, 639 (D. Kan. 1981), *aff'd in part, rev'd in part* 695 F.2d 1343, 1346 (10th Cir. 1982), it was held that in order to obtain a conviction under the statute a prosecutor must prove:

"(1) [T]hat the defendant seller or manufacturer intended the item to be drug paraphernalia; and (2) that the defendant knew, or he acted under circumstances where one reasonably should know, that the ultimate buyer would use the item as drug paraphernalia." 695 F.2d at 1346.

See also *Hejira Corp. v. MacFarlane,* 660 F.2d 1356, 1366 (10th Cir. 1981).

The appellants contend the necessary elements of the crime, that the items were intended to be drug paraphernalia and the defendants knew the items would be used as such, were not set forth in the affidavit and therefore the factual allegations were insufficient for a judge to determine whether a crime had been committed.

It is axiomatic that a search warrant may not issue except upon a showing of probable cause. Sufficient facts must be placed before an issuing magistrate to enable him to make an intelligent and independent determination that probable cause exists. Bald conclusions, mere affirmations of belief, or suspicions are not enough and, while an affidavit may be based on hearsay, there must be sufficient affirmative allegations of fact as to affiant's personal knowledge to provide a rational basis upon which a magistrate can make a judicious determination of probable cause. *State v. Morgan,* 222 Kan. 149, 151, 563 P.2d 1056 (1977); *State v. Marks,* 231 Kan. 645, 647, 647 P.2d 1292 (1982). A mere statement of an officer that he believes or had good grounds to believe contraband or other items subject to seizure are located in a specific vehicle or place is not sufficient to support the issuance of a search warrant. *State v. McMillin,* 206 Kan. 3, 5, 476 P.2d 612 (1970).

What constitutes probable cause was discussed in *State v. Lamb,* 209 Kan. 453, 467, 497 P.2d 275 (1972) *rev'd in part on other grounds,* 225 Kan. 38 (1978):

"Probable cause to arrest refers to that quantum of evidence which would lead a prudent man to believe that the offense has been committed. (*Henry v. United States,* 361 U.S. 98, 102, 4 L.Ed.2d 134, 80 S.Ct. 168 [1959].) It is not necessary that the evidence giving rise to such probable cause be sufficient to prove guilt

beyond a reasonable doubt, nor must it be sufficient to prove that guilt is more probable than not. It is only necessary that the information lead a reasonable officer to believe that guilt is more than a possibility, and it is well established that the belief may be predicated in part upon hearsay information. . . .

. . . .

"Evidence sufficient to support probable cause for an arrest on the part of an arresting officer is also sufficient to support a finding of probable cause by a magistrate in the issuance of a search warrant."

Probable cause, however, does not require the same type of specific evidence of the offense as would be needed to support a conviction. *State v. Marks*, 231 Kan. at 647-48. The burden is on the prosecution to show a search and seizure was lawful and supported by probable cause. K.S.A. 22-3216(2); *State v. Morgan*, 222 Kan. at 152.

The central inquiry here is not whether all of the elements of a crime were alleged, but whether sufficient facts were stated to support a finding of probable cause that a crime had been committed. The statute is designed to prohibit the sale of drug paraphernalia used to inhale or ingest illegal drugs. K.S.A. 1982 Supp. 65-4150(c) extensively lists items which may constitute drug paraphernalia. The affidavit stated the police officers observed several of these items for sale in The Choosey Beggar and they believed these items were drug paraphernalia, as defined in the statute. While the affidavit contained no allegations the items were intended to be sold as drug paraphernalia or that they were sold under such circumstances that the store owners should have known the items would be used for illegal purposes, such inferences could have been drawn from the facts stated. Intent and knowledge are, after all, elements which may be and are frequently proven by circumstantial evidence. *State v. Blue*, 221 Kan. 185, 190, 558 P.2d 136 (1976).

Both parties compare the crime involved here to K.S.A. 21-3717 which makes the possession of burglary tools unlawful. In *State v. Hart*, 200 Kan. 153, 157, 434 P.2d 999 (1967), it was held the statute requires that an intent be shown on the part of the person possessing burglary tools to employ those tools in burglarious activities. Otherwise, the innocent possession of ordinary tools which could be used in unlawful breaking and entering might subject an innocent person to conviction under the statute. In response to the defendant's challenge in *Hart* that a search warrant was issued without probable cause, the court held

the sheriff's affidavit, reciting that the defendant and others were found to be in possession of certain tools useful in burglary and it was believed they were involved in a burglary, was sufficient to support a finding of probable cause for the issuance of a search warrant for the defendant's automobile. 200 Kan. at 162-63. It was not alleged the defendant intended to use the tools in burglarious activities, but only that he and his companions were in possession of such tools.

In two respects the possession of burglary tools is different from the possession of drug paraphernalia. First, as the trial court noted, K.S.A. 1982 Supp. 65-4150(c)(12) extensively lists devices for smoking and ingesting drugs such as marijuana, hashish and cocaine, which may fall within the definition of drug paraphernalia if used or intended for use with a controlled substance. No similar statute concerning burglary tools exists. Second, also noted by the trial court, many of the items listed as drug paraphernalia in the statute do not have any reasonable legitimate purpose and are obviously manufactured and offered for sale for illicit purposes, whereas other items, such as tools which may be useful in committing burglary and weapons which may be used in the commission of a crime have both legitimate and illegitimate uses, rendering it necessary to allege more specific facts from which it can be inferred that such items are possessed for an illegal purpose. The trial court ruled the fact of possession and offering for sale items of drug paraphernalia enumerated in the statute, for which there was no reasonable legitimate use, was sufficient evidence that these items were intended to be used for the purposes prohibited by statute and support a finding of probable cause for the issuance of a search warrant.

The Kansas Drug Paraphernalia Act was enacted in 1981 and became effective July 1, 1981. The first case to consider the Act was *Kansas Retail Trade Co-op. v. Stephan*, 522 F. Supp. 632, finding the Act to be constitutional. It set forth the elements of proof necessary for a conviction. When the search warrant was issued in the instant case, this decision was less than two months old and in all likelihood was not available to the magistrate issuing the warrant or to the police officers. There is no dispute these defendants were the first to be arrested and convicted under the new statute. This court has held that a trial court should review applications for search warrants with common

sense and in a realistic manner, realizing they are often drawn in haste and by nonlawyers. *State v. Morgan,* 222 Kan. at 154. Here the affidavit specified (1) The Choosey Beggar was a retail establishment open to the public, (2) numerous items offered for sale, all of which were listed in the statute as drug paraphernalia, and (3) the officers believed these items to be drug paraphernalia as defined by the statute. This information was sufficient to lead a reasonable officer to believe guilt was more than a possibility. These were not mere bald conclusions or affirmations of belief based on hearsay, but were assertions of positive fact. The facts gave rise to a reasonable inference the items were intended to be used as drug paraphernalia and the store owners were aware the items would be used as such. It does not appear the trial court erred in refusing to suppress the evidence seized pursuant to the search warrant.

The appellants next challenge the constitutionality of the Drug Paraphernalia Act, contending it is vague in that it does not provide fair notice of the criminal activity proscribed nor provide sufficient guidelines for law enforcement personnel to determine whether the Act has been violated. Also they contend the Act encourages arbitrary and discriminatory enforcement.

In *Kansas Retail Trade Co-op. v. Stephan,* 695 F.2d 1343 (10th Cir. 1982), the Tenth Circuit Court of Appeals upheld the constitutionality of the Kansas Act against an attack on these same grounds in an action seeking declaratory and injunctive relief brought by owners of drug paraphernalia shops. The district court found all provisions of the Act to be constitutional except for the section banning advertisement of drug paraphernalia in newspapers and magazines (K.S.A. 1982 Supp. 65-4154), holding it to be overbroad and violative of the First Amendment right of free speech. 522 F. Supp. at 642-43. On appeal the Tenth Circuit Court found the Act constitutional in its entirety, reversing the district court's ruling on the advertising issue. 695 F.2d at 1348. This issue is not raised before this court.

In *Cardarella v. City of Overland Park,* 228 Kan. 698, 620 P.2d 1122 (1980), this court upheld the constitutionality of a municipal ordinance prohibiting the sale or display of drug paraphernalia items against claims the ordinance was vague and overbroad.

This court has adopted certain principles to consider when a

statute is challenged as unconstitutional. In *State v. Lackey*, 232 Kan. 478, 479, 657 P.2d 40 (1982), we recognized that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the Constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it and, if there is any reasonable way to construe the statute as constitutionally valid, that should be done. See also *State v. Carpenter*, 231 Kan. 235, 237, 642 P.2d 998 (1982); *Cardarella v. City of Overland Park*, 228 Kan. at 700. A statute must be sufficiently definite to meet due process standards. The test to determine whether a criminal statute is unconstitutional by reason of being vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process. At its heart, the test for vagueness is a common sense determination of fundamental fairness. *State v. Lackey*, 232 Kan. at 479-80; *State v. Carpenter*, 231 Kan. at 237; *Cardarella v. City of Overland Park*, 228 Kan. at 703. See also *Grayned v. City of Rockford*, 408 U.S. 104, 108, 33 L.Ed.2d 222, 92 S.Ct. 2294 (1972). In determining whether an ordinance is void for vagueness two inquiries are appropriate: (1) whether the ordinance gives fair warning to those persons potentially subject to it, and (2) whether the ordinance adequately guards against arbitrary and discriminatory enforcement. *Cardarella v. City of Overland Park*, 228 Kan. at 702; *State v. Lackey*, 232 Kan. at 480. See also *Hejira Corp. v. MacFarlane*, 660 F.2d at 1365; *Casbah, Inc. v. Thone*, 651 F.2d 551, 558 (8th Cir. 1981). In *Cardarella v. City of Overland Park*, 228 Kan. at 706, we also noted: (1) upon challenges for vagueness greater leeway is afforded statutes regulating business than those proscribing criminal conduct; and (2) a statute is not to be struck down only because marginal cases could be put where doubts might arise.

The appellants contend the Act is vague as applied to the facts of this case because it did not provide them with a sufficient definition of drug paraphernalia. The appellants point to evi-

dence in the record that they quit selling many of the articles in response to a warning letter sent to them by the district attorney's office after the Act became effective. Subsequently, based upon the advice of a representative of the Kansas Retail Trade Cooperative, the appellants restocked the items for sale. Shortly thereafter the appellants were arrested. The appellants believed "the absence of any express intent on their part or on the purchaser's part" would save them from prosecution under the statute, and therefore the statute is vague because they were unable to discern what conduct was proscribed.

Similarly, the appellants contend the statute provided inadequate guidelines for the officers executing the search warrant, the prosecution and trial court to determine what constituted drug paraphernalia in this case. A detective experienced in the narcotics area, John Jennings, accompanied the officers executing the warrant to assist in determining those items for sale which constituted drug paraphernalia. Several boxes of objects were seized. The prosecution offered 22 of these objects believed to be paraphernalia as exhibits. The trial court found sixteen of these items to be drug paraphernalia. Those items which the trial judge held did not constitute drug paraphernalia "beyond a reasonable doubt" included a glass water pipe, which Detective Jennings testified was not functional in the condition in which it was presented at trial; a rolled up fake $100 bill, used to inhale cocaine; a box of cigarette rolling papers; two packages of snuff wrappers and a cigarette case.

K.S.A. 1982 Supp. 65-4150(c) defines drug paraphernalia as materials or objects "used or intended for use" in connection with illegal narcotics, including twelve specific groups of objects. Subsection (c) (12) further details numerous items which may be drug paraphernalia if used or intended for use in ingesting or inhaling marijuana, cocaine or hashish. K.S.A. 1982 Supp. 65-4152 states that "[no] person shall use or possess with intent to use" drug paraphernalia. Likewise, 65-4153 provides "[no] person shall deliver, possess with intent to deliver, manufacture with intent to deliver or cause to be delivered" drug paraphernalia. K.S.A. 1982 Supp. 65-4151 sets forth fourteen factors for courts or law enforcement officers to consider in determining whether an item is intended as drug paraphernalia:

"(a) Statements by an owner or person in control of the object concerning its use.

"(b) Prior convictions, if any, of an owner or person in control of the object, under any state or federal law relating to any controlled substance.

"(c) The proximity of the object, in time and space, to a direct violation of the uniform controlled substances act.

"(d) The proximity of the object to controlled substances.

"(e) The existence of any residue of controlled substances on the object.

"(f) Direct or circumstantial evidence of the intent of an owner or person in control of the object, to deliver it to a person the owner or person in control of the object knows, or should reasonably know, intends to use the object to facilitate a violation of the uniform controlled substances act. The innocence of an owner or person in control of the object as to a direct violation of the uniform controlled substances act shall not prevent a finding that the object is intended for use as drug paraphernalia.

"(g) Oral or written instructions provided with the object concerning its use.

"(h) Descriptive materials accompanying the object which explain or depict its use.

"(i) National and local advertising concerning the object's use.

"(j) The manner in which the object is displayed for sale.

"(k) Whether the owner or person in control of the object is a legitimate supplier of similar or related items to the community, such as a distributor or dealer of tobacco products.

"(l) Direct or circumstantial evidence of the ratio of sales of the object or objects to the total sales of the business enterprise.

"(m) The existence and scope of legitimate uses for the object in the community.

"(n) Expert testimony concerning the object's use."

The Kansas Drug Paraphernalia Act is nearly identical to the Drug Enforcement Administration's Model State Drug Paraphernalia Act. Variations of the Model Act have been adopted in numerous states and have generated a rash of litigation. Several circuit courts have upheld state drug paraphernalia laws which have been challenged for vagueness. See *New England Accessories Trade Ass'n v. Tierney,* 691 F.2d 35 (1st Cir. 1982); *New England Accessories Trade v. City of Nashua,* 679 F.2d 1 (1st Cir. 1982); *Tobacco Accessories, Etc. v. Treen,* 681 F.2d 378 (5th Cir. 1982); *Levas and Levas v. Village of Antioch, Ill.,* 684 F.2d 446 (7th Cir. 1982); *Casbah, Inc. v. Thone,* 651 F.2d at 559; *Kansas Retail Trade Co-op. v. Stephan,* 695 F.2d 1343; *Hejira Corp. v. MacFarlane,* 660 F.2d at 1367; *Florida Businessmen, Etc. v. City of Hollywood,* 673 F.2d 1213 (11th Cir. 1982); *High Ol' Times, Inc. v. Busbee,* 673 F.2d 1225 (11th Cir. 1982). One circuit found a drug paraphernalia law to be unconstitutionally vague where it defined drug paraphernalia as items "designed

for use" with controlled substances. *Record Revolution No. 6, Inc. v. City of Parma*, 638 F.2d 916, 934-36 (6th Cir. 1980), *vacated and remanded* 451 U.S. 1013 (1981). However, in *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 502, 71 L.Ed.2d 362, 102 S.Ct. 1186 (1982), the Supreme Court held the "designed for use" language was not per se unconstitutionally vague. This language was not adopted in the definition of drug paraphernalia in K.S.A. 1982 Supp. 65-4150.

The Kansas Act makes it clear that to violate the statute a person must have the intent that the items be drug paraphernalia. In *Kansas Retail Trade Co-op. v. Stephan*, 695 F.2d at 1343, the Tenth Circuit held that because the violator must actually intend that an item be drug paraphernalia he has notice of his criminal act and due process is satisfied. The statute therefore is not unconstitutionally vague on the issue of subjective intent. See also *Hejira Corp. v. MacFarlane*, 660 F.2d at 1366-67; *Levas and Levas v. Village of Antioch, Ill.*, 684 F.2d at 453-54; *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. at 490.

In response to an argument in *Cardarella* similar to that raised by the appellants here, we stated:

"In the present case it is sufficient to say that the ordinance meets constitutional muster if a person of common intelligence engaged in the business of selling the type of merchandise regulated by the ordinance could examine the ordinance and not be confused by its requirements. The plaintiff, of course, argues that the two types of goods subject to the sale or display prohibitions, 'instruments' and 'simulated drugs', are so vaguely defined as to provide no warning of what specific items are restricted. A reading of the ordinance indicates that this is not the case. It is this court's conclusion that the ordinance's prohibitions are sufficiently clear to provide any person of common intelligence the fair warning of what is forbidden demanded by the constitution.

"The plaintiff first attacks the definition of 'instruments' provided in the ordinance. The definition reads 'a device designed for use or intended for use in ingesting, smoking, administering or preparing . . . any . . . controlled substance.' [Ord. RD-1048, § 11.56.130 (P)]. The ordinance does not define 'device' and 'designed for use' and, according to the plaintiff, that omission would make it impossible for any person to know with certainty or consistency what could be sold or displayed. The simple answer is that under the ordinance any device *intended by the seller* for use in 'ingesting, smoking, administering or preparing . . . controlled substances[s]' is prohibited. By focusing on the intent of the seller, the ordinance avoids many of the vagueness problems faced by the ordinance in *Riddle v. Clack*, supra, [Case No. CA-3-77-0525-D (N.D. Tex. 1977)] and many of the hypotheticals raised by the plaintiff in his arguments to this court. The indefiniteness of just referring to the intent of the seller is avoided by the enumeration of five criteria that lend themselves to a determination of

what a particular item is to be used for and what the seller 'intends' their use to be. [Ord. RD-1048, § 11.56.130(P)(a)(e).]" 228 Kan. at 703-04.

In *Cardarella* the five factors contained in the ordinance to consider whether a particular item was drug paraphernalia and intended for such were: (1) whether the person charged with violation of the ordinance was a licensed dealer of tobacco products, (2) expert testimony concerning the use of the items, (3) evidence concerning the type of business and items sold by the alleged violator; (4) advertising concerning the use of the items, and (5) advertising concerning the nature of the business. 228 Kan. at 699-700.

In the instant case the statute more than adequately provides a person of common intelligence with fair warning of what is prohibited. The statute extensively lists those items and materials which constitute drug paraphernalia if intended by the seller to be used or sold as such. As made clear by the foregoing authorities, the *subjective intent* of the seller is the essential factor in determining that a violation of the statute has occurred. Whether an item actually constitutes drug paraphernalia only comes into play where the seller intends in the first instance that it is to be used as such. *Kansas Retail Trade Co-op. v. Stephan,* 695 F.2d at 1346; *Tobacco Accessories, Etc. v. Treen,* 681 F.2d at 383. A person of average intelligence possessing and offering for sale any of the specific items or groups of objects enumerated in the statute is sufficiently put on notice that he will be in violation of the Act if he intends for those items to be drug paraphernalia and has reason to know they will be used as such. All that the "reasonably should know" language demands is that the seller or manufacturer be required to open his eyes to the objective realities of his activity. *Mid-Atlantic Accessories Trade v. State of Md.,* 500 F. Supp. 834, 845 (D. Md. 1980). The statute does not require any "express intent" on the part of the seller or buyer as the appellants suggest, nor is conviction precluded in the absence of evidence of such express intent. As noted in *Cardarella,* "[t]he indefiniteness of just referring to the intent of the seller is avoided by the enumeration of five criteria that lend themselves to a determination of what a particular item is to be used for and what the seller 'intends' their use to be." Where items have both legitimate and illegitimate purposes the intent of the seller becomes the key to violation and must be proved by either direct

testimony or inferred using the type of evidence enumerated in the ordinance. 228 Kan. at 704. In prosecutions under the statute the evidence concerning the fourteen factors listed in 65-4151 is to be considered in determining the seller's intent.

The appellants' argument that the Act does not provide sufficient guidelines for law enforcement officers to determine whether an item is drug paraphernalia has been rejected by several courts. In *Hejira Corp. v. MacFarlane*, 660 F.2d at 1368, the court held the eleven factors listed in the Colorado Act were sufficiently "positive and concrete" to guard against unconstitutional arbitrary enforcement. The Kansas Act includes three additional factors, ([*b*], [*c*] and [*l*]) not contained in the Colorado Act. The court in *Kansas Retail Trade Co-op. v. Stephan*, 695 F.2d at 1347, found *Hejira* to be controlling regarding the eleven factors in the Kansas Act identical to those contained in the Colorado Act, and went on to state:

"It was pointed out by the district court that none of the fourteen factors create a presumption that a certain item is drug paraphernalia. Rather the factors are only to be considered in making a determination regarding drug paraphernalia. The trial court has found the three questioned factors [(*b*), (*c*) and (*l*)] highly relevant and not unconstitutionally vague. We find no authority or reasoning which would justify overturning that decision."

In *Casbah, Inc. v. Thone*, 651 F.2d at 560, the court stated:

"The fact that the statute attempts to guide such personnel in their enforcement duties lessens, rather than increases, the danger of arbitrary enforcement.

"The enumerated factors themselves pose no constitutional problem, and are valuable guides in determining what items are prohibited."

Other courts have also approved these factors as sufficient guidelines determining when an object is drug paraphernalia in enforcement of the Act. See *New England Accessories Trade Ass'n v. Tierney*, 691 F.2d at 37; *Levas and Levas v. Village of Antioch, Ill.*, 684 F.2d at 454; *New England Accessories Trade v. City of Nashua*, 679 F.2d at 6-7; *Tobacco Accessories, Etc. v. Treen*, 681 F.2d at 384.

In *Cardarella* we held the challenged ordinance was narrowly drawn and provided adequate standards by which the proscribed conduct could be measured. The statute involved here is more extensively drafted and more precisely defines the unlawful activity than the ordinance involved in *Cardarella*. Nine addi-

tional factors are provided for the court to use in determining whether a violation has occurred.

The appellants' claim is unpersuasive that the guidelines are inadequate because of the inconsistency between the judgment of the detective, prosecutor and trial court in determining which items were drug paraphernalia. As noted in *Hejira Corp. v. MacFarlane*, 660 F.2d at 1367, the fact that different minds may reach different results when seeking to determine whether a given object falls within the statutory definition of drug paraphernalia does not render the statute void for vagueness. In *New England Accessories Trade Ass'n v. Tierney*, 691 F.2d at 37, the court stated:

"While plaintiffs argue that the facts listed in subsection 3 fail to provide black and white standards from which law enforcement officers can determine a merchant's intent, law enforcement always requires the exercise of some judgment, *Grayned v. City of Rockford*, 408 U.S. 104, 114, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972), and the assessment called for under the Maine Act is no different in kind than that ordinarily encountered. . . ."

In the instant case the trial court was aware this was the first prosecution in the state under the new statute and, in an effort to minimize the possibility of error, undoubtedly exercised an abundance of caution in applying the factors in 65-4151 in determining which of the items introduced as evidence were drug paraphernalia. Those items excluded as not constituting drug paraphernalia, with the exception of the nonfunctional water pipe, were capable of both legitimate and illegitimate uses. Rather than supporting the claim of "insufficient guidelines for enforcement" advanced by the appellants, this indicates an effort on the part of the trial court to conscientiously apply the factors in the statute in determining whether the items were drug paraphernalia. The appellants' hypothetical argument asserted in their brief and in oral argument before this court that a grocery store owner may be convicted under the Act for selling plastic sandwich bags, allegedly the most common form of narcotics paraphernalia, is also without merit. This argument overlooks the necessary intent requirement on the part of the seller that the item be used as drug paraphernalia. As noted by the Supreme Court in *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. at 503-04 n. 21, such theoretical possibilities are of no due process significance unless the possibility ripens into a conviction.

The appellants additionally contend they have been unfairly

singled out for enforcement of the statute. This is based upon evidence in the record that The Choosey Beggar and one other establishment received warning letters from the district attorney's office in September 1981, and only the appellants were subsequently prosecuted. This claim is based in part on the appellants' example that hundreds of merchants sell sandwich bags, but only they were arrested for selling drug paraphernalia. As noted above, this argument conveniently overlooks the intent requirement. The record is barren of any evidence that there were other businesses in Johnson County still selling merchandise of the character described and enumerated in the statute when the appellants were arrested. No evidence of discriminatory or selective enforcement of the law was produced at trial. The mere fact the appellants were the first to be prosecuted under the law does not alone establish the district attorney's office engaged in arbitrary enforcement of the law.

The appellants next contend the evidence was insufficient to support the trial court's ruling that the articles were narcotics paraphernalia or that the appellants intended the items to be drug paraphernalia and knew or reasonably should have known they would be used as such. Detective Jennings testified extensively concerning the ordinary use of the seized items in evidence. During his work in the narcotics unit of the police department he made hundreds of undercover drug purchases and became familiar with the terminology and items of paraphernalia commonly utilized by drug users. Detective Jennings testified he has seen hashish pipes and water pipes similar to those introduced as evidence used with marijuana or hashish on hundreds of occasions. These pipes had small size bowls to hold the smoking material. Detective Jennings testified that hashish, which burns slower than marijuana, is usually smoked in a bowl that size. He testified he has never seen tobacco used in a bowl that small and has never seen anyone smoke tobacco in a water pipe. Some of these pipes had an extra small hole in them, commonly referred to as a "supercharger." Detective Jennings testified a supercharger works by the pipe smoker placing his finger over the hole to cut off the supply of fresh air, so that a higher concentration of smoke can be inhaled from the pipe. Some of these pipes also had small mesh-like screens in the bowls. Detective Jennings testified these screens were common

to marijuana pipes and prevented ashes from being inhaled through the pipe.

Several items were introduced as exhibits which were connected with the use of cocaine. One item consisted of a "cocaine kit," which was a small leather pouch containing a small mirror, razor blade, small glass vial, small spoon and tube. Detective Jennings testified he has seen those types of kits used with cocaine. He explained the vial is used to store the supply of cocaine. The cocaine is placed on the mirror where it is "cut" with the razor blade and then inhaled off the mirror through the tube. The cocaine could also be inhaled from the spoon. Several other small vials and spoons used with cocaine were also introduced into evidence. Paper wrappers used for packaging cocaine were placed into evidence. Two items described as "cocaine snorters" were also introduced. These had a small container for storing cocaine with an apparatus attached for inhaling the cocaine into the user's nose. The directions for use written on the package of one of these items stated it would cause a "Shot-Gun" effect. Detective Jennings testified this term is commonly used with respect to controlled substances and refers to the situation where cocaine is drawn out of the bottle and into the nose very quickly. He has never seen any of these items used with snuff.

Several "roach clips" of various designs used to hold the butt of a marijuana cigarette were introduced. Detective Jennings testified he has seen these used hundreds of times with marijuana cigarettes and has never seen them used to hold tobacco cigarettes. Rolling papers with the word "cannabis" were introduced. A "concert kit" designed for smoking marijuana at concerts was also received into evidence. It contained a small hashish pipe, screens, pipe cleaner, rolling papers, a plastic bag, roach clip and matches. Many of the items seized were decorated with marijuana leaf designs. Some items bore small stickers stating "Not for sale to minors" and "Not intended for illegal use."

Detective Jennings testified the articles were located along the back of the store in glass display cases. Two weeks prior to the execution of the search warrant he had entered the store and had not seen any items of paraphernalia for sale. He asked defendant Dunn why they were not selling any drug parapher-

nalia and Dunn replied that a new law had made it illegal and he had stopped selling it until a court decision was rendered which would allow him to put it back out for sale.

Detective Jennings and Officer Keith Faddus, who executed the search warrant, both testified they did not observe any snuff for sale at The Choosey Beggar on the day of the search. Defendant French testified there was snuff for sale that day. However, he was unable to locate any packages of snuff when shown photographs of the display cases taken on the day the search warrant was executed. Detective Jennings testified no controlled substances were found on the premises. Officer Faddus testified that prior to the time the Act became effective there was a sign in the window of the store advertising paraphernalia, but there was no advertising of such items the day of the search.

Jeffrey Ladd, the manager of a pipe and tobacco store with several years' experience in tobacco and pipe sales, was called as a witness for the State. He testified he has never seen pipes sold in tobacco shops or advertised for sale in trade publications similar to those seized from The Choosey Beggar. He testified he had never seen a tobacco water pipe, pipes like those in evidence used with tobacco, a pipe with an extra hole or "supercharger," or screens used in tobacco pipes. He also testified it would not be feasible to burn pipe tobacco in the pipes in evidence because the bowls were so small it would be almost impossible to get tobacco in one. If one was successful in getting tobacco in the bowl and lighting it, there would only be enough tobacco to burn for 45 seconds to one minute.

The defendants introduced several common smoking pipes made out of a variety of materials with screens in them which were sold at The Choosey Beggar. Mr. Ladd testified there was no reason for tobacco purposes to have the screens in the pipes. Also, those pipes were made out of such materials that if used to smoke regular pipe tobacco the pipe would burn up in a matter of days.

As noted earlier, a court is to consider evidence concerning the fourteen factors in 65-4151 in determining whether an item constitutes drug paraphernalia and the seller's intent as to their use. The appellants contend the State, at best, offered meager circumstantial evidence only concerning the character of the items based upon their appearance and the various uses of the

objects. The appellants contend the trial court based its decision solely upon the appearance of the articles with absolutely no evidence concerning intent.

In a criminal action where the defendant challenges the sufficiency of the evidence for a conviction, the standard on review is: Does the evidence when viewed in the light most favorable to the prosecution convince the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt? *State v. Peoples,* 227 Kan. 127, 133, 605 P.2d 135 (1980). See also *State v. Williams,* 229 Kan. 290, 623 P.2d 1334, *reh. denied* 229 Kan. 646 (1981).

Contrary to the argument advanced by the appellants it is not necessary for evidence to be presented on each of the fourteen factors listed in 65-4151 to support a conviction. As noted by the court in *Hejira Corp. v. MacFarlane,* 660 F.2d at 1368, "some of the standards may not apply in each and every case." In *Kansas Retail Trade Co-op. v. Stephan,* 522 F. Supp. at 640, the district court recognized that "[n]one of the fourteen factors listed in [K.S.A. 1982 Supp. 65-4151] create a presumption that a certain item is drug paraphernalia; they are only to be 'considered' in making a determination regarding drug paraphernalia."

Viewing the evidence in the light most favorable to the prosecution, the evidence was sufficient to support the trial court's finding that certain of the seized items were intended by the appellants to be used as drug paraphernalia in violation of the Act. All of the items found to be paraphernalia fell within the group of items specifically listed in 65-4150(c)(12) which may constitute drug paraphernalia if intended for use as such. The testimony of Detective Jennings and Jeffrey Ladd left little doubt these items were commonly, if not exclusively, used in connection with the use of marijuana, hashish or cocaine, and that none of these items had any practical or reasonable legitimate use. This testimony relates to 65-4151(m), the existence of legitimate uses for the object, and (*n*), expert testimony concerning the object's use. The claim made by the appellants that all of the smoking devices could be used for the ingestion of regular pipe tobacco is not supported by the record. The testimony by Gary French that snuff was sold in the store was questionable in that it could be considered self-serving, he was unable to indicate where it was displayed for sale in the photo-

graphs of the display cases, and his testimony was directly refuted by the testimony of Detective Jennings and Officer Faddus. This information was relevant to 65-4151(k), whether the owner is a legitimate supplier of related items, such as a tobacco products dealer. There also was evidence the appellants had advertised drug paraphernalia for sale prior to the enactment of the law and they ceased selling the items until the district court's decision in *Kansas Retail Trade Co-op. v. Stephan.* Many of the items contained stickers reading "Not intended for illegal use." This evidence related to 65-4151(f), as direct or circumstantial evidence of the seller's intent to deliver the item to a person the seller knows, or should reasonably know, intends it to be used with controlled substances.

In determining these items were intended by the defendants to be drug paraphernalia within the meaning of the statute the trial court stated:

Specifically at issue then is whether defendants possessed with intent to deliver drug paraphernalia knowing or under circumstances where one reasonably should know that it will be used with a controlled substance—with or in conjunction with a controlled substance.

"Many considerations are raised by the exhibits. Among those considerations are the following:

"1. Should individual innocuous items especially susceptible to conversion, conversion to illicit use with controlled substances be considered drug paraphernalia? The Court feels this question must be answered in the negative on that particular issue.

"2. Does a marijuana leaf design on a manufactured item susceptible to use with controlled substances create a presumption of illicit intended use? Again, the Court must respond in the negative. At best it creates an inference.

"3. Does the alteration of otherwise innocuous manufactured items such as an electronic alligator clip convert that item to drug paraphernalia? The Court feels this question must be answered in the affirmative, absent any other reasonable and obviously intended use thereof.

"4. Does the apparent unadaptibility of a manufactured item to a use other than drug related create a presumption of illicit intended use? Again, the Court responds in the affirmative.

"5. Are individual items so distinctive or unique in design and character as to preclude a legitimate intended use? The Court again answers in the affirmative.

"6. Does the minimal size of a pipe bowl, the presence of a wire mesh filter and/or a supercharger second channel opening, convert an otherwise legitimate smoking pipe to drug paraphernalia intended for use with controlled substances? The Court again answers in the affirmative.

"7. Does the combining into kit form of mirrors, razor blades, snorting spoons, etc., individually innocuous items, collectively preclude a presumption of legitimate intended use? The Court again answers that question in the affirmative.

"8. Does the combining of all the necessary usual materials for the utilization and smoking of hashish as in the concert kit, State's Exhibit No. 22, preclude any reasonable presumption of intended legitimate use? The Court's answer is again in the affirmative.

"9. May an item especially designed and manufactured having obvious specific use in the ingesting of controlled substances and having no reasonable, apparent or obvious legitimate use be considered other than drug paraphernalia? The question again by the Court must be answered in the negative."

The trial court then ruled that the appellants' claim that they did not know the buyer's intention to use the items in ingesting controlled substances was unpersuasive, stating:

"Neither is the language 'Not intended for illegal use' contained on many of the items in question of any legal consequence. It is like marking a firecracker, 'Not intended to explode.' Each such disclaimer would be equally ludicrous."

We have previously noted the term "reasonably should know" merely requires the seller whose intent is to deliver drug paraphernalia to open his eyes to the objective realities of the activity and the character and nature of the items he sells. In *Florida Businessmen, Etc. v. City of Hollywood,* 673 F.2d at 1219, the court stated:

"The 'reasonably should know' standard does not punish innocent or inadvertent conduct but establishes a scienter requirement that the defendant acted in bad faith, with intent or knowledge that the recipient will use the paraphernalia with controlled substances."

On the same note the court in *Delaware Accessories Trade Ass'n v. Gebelein,* 497 F. Supp. 289, 294 (D. Del. 1980), reasoned:

"The legitimate merchant who sells innocuous items need make no judgment about the purpose of the buyer based upon the surrounding circumstances. The dealer, on the other hand, who sells innocuous items with the intent that they be used with drugs is, in effect, put on notice by the illicit nature of his activity that he must be careful to conform his conduct to the law. Even the illicit dealer, however, is not held legally responsible, as plaintiffs would suggest, for guessing what is in the mind of a buyer. The seller is safe as long as he does not actually know the buyer's purpose *and as long as the objective facts that are there for him to observe do not give fair notice that illegal use will ensue."* (Emphasis added.)

We conclude the trial court's judgment is supported by the evidence. The appellants failed to present evidence of any substance concerning reasonable legitimate uses for the items of paraphernalia, leading to an inference that the appellants were

aware the items would be used for illegal purposes and intended to sell them for such purposes.

The judgment of the lower court is affirmed.