No. 73,978

STATE OF KANSAS, *Appellant*, v. DAVID C. BRYAN, *Appellee*.

(910 P.2d 212)

144

Opinion filed January 26, 1996.

*Jerry E. Little*, assistant district attorney, argued the cause, and *Gayle B. Larkin*, assistant district attorney, *Mark A. Knight*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellant.

*Timothy G. Riling*, of Riling, Burkhead, Fairchild & Nitcher, Chartered, of Lawrence, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: This appeal involves the question of the constitutionality of the 1994 version of the Kansas stalking law, K.S.A. 1994 Supp. 21-3438. The district court held the statute unconstitutionally vague and dismissed a stalking charge against the defendant, David C. Bryan. For reasons set forth below, we agree that the statute is unconstitutionally vague and affirm.

The defendant was involved in a relationship with the alleged victim during the fall semester of 1994 at the University of Kansas. After the relationship ended, the alleged victim reported that the defendant made repeated contacts with her on the university campus, including contact in a university building. He was charged with one count of stalking in violation of K.S.A 1994 Supp. 21-3438. The defendant filed a motion to dismiss, arguing that the statute prohibiting stalking was unconstitutional in that it was vague, overly broad, and lacked requisite criminal intent.

Both parties filed supporting memorandums with the district court. Following argument, the court announced that the terms "annoys" and "harasses," as used in the statute, were unconstitutionally vague. The court filed an order of dismissal, finding that K.S.A. 1994 Supp. 21-3438 was unconstitutionally vague "for the reasons as detailed in Defendant's memorandum filed with the Court." We have jurisdiction under the provisions of K.S.A. 1994 Supp. 22-3601(b)(2).

Before we begin our consideration of the constitutionality of the above statute, we note that the Kansas Legislature passed the first stalking law in 1992 (L. 1992, ch. 298, § 95), amended it substantially in 1994 (L. 1994, ch. 348, § 13), the version we now consider, and further amended it substantially in 1995 (L. 1995, ch. 251, §

10). We do not consider the 1992 and 1995 versions but limit our consideration to the only issue before us, *viz.*, the constitutionality of K.S.A. 1994 Supp. 21-3438.

## Standard of Review

The district court dismissed the charge of stalking against the defendant based upon its conclusion "after reviewing the Court file, the memorandums of law submitted by the attorneys for each party and . . . oral arguments of the attorneys, . . . that K.S.A. [1994 Supp.] 21-3438 is unconstitutionally vague." The question posed on appeal is one of law. Our review is de novo and unlimited. *State v. Randall*, 257 Kan. 482, 894 P.2d 196 (1995). Recently, this court in *State v. Adams*, 254 Kan. 436, 438-39, 866 P.2d 1017 (1994), enumerated the standards to be applied by a court when addressing the question of whether a law is unconstitutionally vague and indefinite:

" ' "The constitutionality of a statute is presumed. All doubts must be resolved in favor of its validity, and before the act may be stricken down it must clearly appear that the statute violates the constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it. If there is any reasonable way to construe the statute as constitutionally valid, that should be done. A statute should not be stricken down unless the infringement of the superior law is clear beyond substantial doubt." ' (Quoting *Moody v. Board of Shawnee County Comm'rs*, 237 Kan. 67, 74, 697 P.2d 1310 [1985].)

"In relation to the specific complaint of vagueness, this court stated:

'[T]he void-for-vagueness analysis is based upon a due process requirement that a criminal statute is unconstitutionally vague and indefinite unless its language conveys a sufficiently definite warning of the conduct proscribed when measured by common understanding and practice. *State v. Dunn*, 233 Kan. 411, 418, 662 P.2d 1286 (1983).' *City of Wichita*, 246 Kan. at 258.

In *State v. Dunn*, 233 Kan. 411, 418, 662 P.2d 1286 (1983), the test was stated as

'whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process.'

In *City of Wichita*, 246 Kan. at 259, the court quoted *State v. Kirby*, 222 Kan. 1, 4, 563 P.2d 408 (1977), for this trenchant comment: ' "At its heart the test for vagueness is a commonsense, determination of fundamental fairness." '

"In addition to the inquiry whether the proscribed conduct is adequately defined, the court recognizes that a second inquiry is appropriate. That inquiry is ' "whether the ordinance adequately guards against arbitrary and discriminatory enforcement." *Dunn*, 233 Kan. at 418 (citing *Cardarella v. City of Overland Park*, 228 Kan. 698, 702, 620 P.2d 1122 [1980]).' *City of Wichita*, 246 Kan. at 259. When making either inquiry, the court should bear in mind that '[t]he standards of certainty in a statute punishing criminal offenses are higher than in those depending primarily upon civil sanctions for enforcement.' 246 Kan. 253, Syl. ¶ 3.

"In *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972), the United States Supreme Court discussed the reasons why

'[v]ague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on a *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' "

### K.S.A. 1994 Supp. 21-3438 provides:

"(a) Stalking is an intentional and malicious following or course of conduct directed at a specific person when such following or course of conduct seriously alarms, annoys or harasses the person, and which serves no legitimate purpose.

. . . .

"(d) For the purposes of this section, 'course of conduct' means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose and which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the person. Constitutionally protected activity is not included within the meaning of 'course of conduct.' "

The defendant argues that the use of the terms "alarms," "annoys," and "harasses" in subsection (a) of the statute are subject to a wide range of different meanings dependent upon a potential victim's individual sensibilities. According to the defendant, the language used does not convey a sufficiently definite warning of the conduct proscribed, and persons of common intelligence must necessarily guess at its meaning and differ as to its application. The

State, however contends that the terms used are not unconstitutionally vague.

The State argues that this court has held that the term "alarm" is not unconstitutionally vague, citing *State v. Huffman*, 228 Kan. 186, 193, 612 P.2d 630 (1980). *Huffman* involved a challenge to the constitutionality of K.S.A. 21-4101, which defined disorderly conduct using the words "alarm, anger or disturb." The court, consistent with its responsibility to uphold the constitutionality of state statutes whenever possible, narrowly construed the statute to apply only to fighting words. In addressing the vagueness attack, the court concluded that the "[n]arrow construction of 21-4101, to apply to fighting words, removes any possible vagueness residing in the *mens rea* portion of the statute." 228 Kan. at 193. Thus, the State's reliance upon this case for the proposition that "alarms" is sufficiently definite in and of itself to withstand a vagueness attack is misplaced.

The State, relying upon authority contained in an A.L.R. annotation, *Vagueness as Invalidating Statutes or Ordinances Dealing with Disorderly Persons or Conduct*, 12 A.L.R. 3d 1448, 1452, argues that courts have consistently rejected the contention that words such as "annoy," "molest," "obstruct," and "interfere with" are unconstitutionally vague. While this may have been true of cases decided prior to 1967 when the cited A.L.R. article was written, many subsequent cases have found these terms to be unconstitutionally vague.

Four years after the A.L.R. annotation cited above was published, the United States Supreme Court decided *Coates v. City of Cincinnati*, 402 U.S. 611, 29 L. Ed. 2d 214, 91 S. Ct. 1686 (1971). The Court examined a Cincinnati municipal ordinance prohibiting disorderly conduct to determine whether it was unconstitutionally vague. 402 U.S. 611. The ordinance made it unlawful for three or more persons to assemble on public property and conduct themselves in a manner "annoying" to passersby. 402 U.S. 611 n.1. In finding that the statute was impermissibly vague, the Court stated:

"Conduct that annoys some people does not annoy others. Thus, the ordinance is vague, not in the sense that it requires a person to conform his conduct to an

imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. As a result, 'men of common intelligence must necessarily guess at its meaning.' [Citation omitted]." 402 U.S. at 614.

Other courts have followed the holding in *Coates* in determining that statutes prohibiting annoying conduct are impermissibly vague. In *Poole v. State*, 524 P.2d 286, 287-89 (Alaska 1974), the court examined a disorderly conduct statute prohibiting conduct which annoys or alarms another. *Poole* concluded that the term "annoys" was vague and that the term "alarms" was no more definite. In *Kramer v. Price*, 712 F.2d 174, 178 (5th Cir. 1983), the Fifth Circuit Court of Appeals, interpreting a Texas harassment statute prohibiting telephone conversations which annoy or alarm recipients, found that both "alarm" and "annoy" were inherently vague. *Kramer* concluded that the statute was vague because the crime depended upon the sensitivity of the complainant. *Kramer* was followed by *May v. State*, 765 S.W.2d 438 (Tex. Crim. 1989), in which the Texas Court of Criminal Appeals found a newer version of the same statute unconstitutionally vague notwithstanding the fact that it had been amended to require that the person charged must have intentionally alarmed or annoyed the recipient of the call. 765 S.W.2d at 440. The *May* court determined that the same infirmity still existed in the new statute because the crime depended upon the sensitivity of the complaintant. 765 S.W.2d at 440.

In *People v. Norman*, 703 P.2d 1261, 1266 (Colo. 1985), the Colorado Supreme Court determined that the Colorado harassment statute proscribing a course of conduct or repeated acts which alarm or seriously annoy a person was unconstitutionally vague. The court noted that under such a statute, an actor, clown, or writer could be subject to prosecution if his or her actions were considered annoying by another person. 703 P.2d at 1267. Likewise, in *Langford v. City of Omaha*, 755 F. Supp. 1460 (D. Neb. 1989), the court concluded that the word "annoys" used in the statute was unconstitutionally vague because there was no standard for determining whose sensitivity would measure annoying conduct.

The main concern expressed in the above case with using words such as "alarms" or "annoys" is that the words are subject to a wide variety of interpretations, and unless an objective standard is incorporated into the governing statute, the words are entirely dependent upon the subjective feelings of the victim.

A recent law review article discussing stalking legislation provides some guidance as to when language such as "alarms," "annoys," and "harasses" becomes unconstitutionally vague. See Boychuck, *Are Stalking Laws Unconstitutionally Vague or Overbroad?*, 88 Nw. U.L. Rev. 769 (1994). Boychuck discusses some of the problems associated with using the words "annoys" and "alarms" as well as the term "harasses" in stalking laws. 88 Nw. U.L. Rev. at 784-88. According to Boychuck, those stalking laws most capable of withstanding challenges of vagueness and overbreadth, based on the above terms, have three main components: (1) They require a credible threat along with the harassing conduct; (2) exempt constitutionally protected activity; and (3) *define the terms in relation to an objective standard.* (Emphasis added). 88 Nw. U.L. Rev. at 788-89.

K.S.A. 1994 Supp. 21-3438 prohibits an intentional and malicious following *or* course of conduct when such following *or* course of conduct seriously alarms, annoys, or harasses the person. The statute defines "course of conduct" in relation to an objective standard: "[C]ourse of conduct" means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, *and which would cause a reasonable person to suffer substantial emotional distress* and must actually cause substantial emotional distress to the person. (Emphasis added.) K.S.A. 1994 Supp. 21-3438(d).

However, K.S.A. 1994 Supp. 21-3438 contains no guidelines to determine when a following becomes alarming, annoying, or harassing. There is no definition of the terms alarming, annoying, or harassing in relation to an objective standard when a charge of stalking is based upon "following." Thus, that portion of the statute proscribing the intentional and malicious following when such following seriously alarms, annoys, or harasses the person without defining those terms in relation to an objective standard raises the

same question and calls for the same conclusion as expressed in *Coates v. City of Cincinnati*:

"Conduct that annoys some people does not annoy others. Thus, the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. As a result, 'men of common intelligence must necessarily guess at its meaning.' [Citation omitted]." 402 U.S. at 614.

The 1992 version of the Kansas stalking law incorporated an objective standard. As originally enacted, the statute prohibited the "willful, malicious and repeated following *and harassment* of another person." L. 1992, ch. 298, § 95. (Emphasis added.) The term "harassment" was defined as a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and *which would cause a reasonable person to suffer substantial emotional distress* and actually causes that type of distress in the victim. See L. 1992, ch. 298, § 95. Although the terms "alarms," "annoys," and "harasses" were used, they were defined by an objective standard in that the conduct must be such as would cause a reasonable person to suffer emotional distress and actually cause such distress.

However, the 1994 legislature amended the stalking law by replacing the term "harassment" with the phrase "course of conduct" and, more importantly, by splitting "following" and "course of conduct" with the conjunctive "or." The phrase "course of conduct" was then defined in relation to an objective standard, but the word "following" was neither defined nor was there an objective standard incorporated when considering whether the following seriously alarmed, annoyed, or harassed the victim. L. 1994, ch. 348, § 13. The 1994 statute, primarily because of its use of the conjunction "or," provided that a person could be guilty of stalking if that person followed another in a manner that seriously alarmed, annoyed, or harassed the other person. The crime depends upon the sensitivity of the complainant.

While the district court did not specifically discuss the defendant's claim that the term "following" as used in the 1994 version of the Kansas stalking law was unconstitutionally vague, we do not find that term to be unconstitutionally vague. In spite of the fact

that "following" encompasses a wide variety of meanings, courts examining the term within the context of stalking statutes have found it not vague. In *State v. Culmo*, 43 Conn. Supp. 46, 63, 642 A.2d 90 (1993), the Connecticut Superior Court declared that "[l]anguage has its limits" and determined that such vagueness as it exists in the term "follow" is not sufficient to render its meaning incomprehensible. 43 Conn. Supp. at 63. The Supreme Court of Illinois in *People v. Bailey*, 167 Ill. 2d 210, 657 N.E.2d 953 (1995), recently held that the term "follow" as used in its stalking statute conveys a sufficiently definite warning to pass constitutional muster. The *Bailey* court stated:

> "To commit the offense of stalking, the statute requires that in furtherance of a threat the defendant follow the victim or place the victim under surveillance on at least two separate occasions. The terms 'follows' is not defined in the statute. Bailey contends that 'follows' is susceptible to a variety of meanings and, therefore, the term is vague. In the absence of a statutory definition, courts will assume that statutory words have their ordinary and popularly understood meanings. [Citation omitted.]
>
> "Webster's defines 'follow' to mean 'to go, proceed, or come after' and 'to go after in pursuit or in an effort to overtake.' (Webster's Third New International Dictionary 883 [1986].) Because the following must be in furtherance of a threat, the term 'following' must have an element of pursuit to it. Thus, it does not encompass aimless, unintentional, or accidental conduct. The term 'following' does imply a proximity in space as well as time. Whether a person has maintained sufficient visual or physical proximity to fall within the purview of the stalking statute will depend on a variety of factors in each case. These are appropriate issues for the trier of fact. [Citation omitted.] As this court has consistently held, impossible levels of specificity are not required. The only requirement is that the statute convey sufficiently definite warnings that can be understood when measured by common understanding and practices. [Citations omitted.]" 167 Ill. 2d at 229.

We agree with the Connecticut and Illinois courts' analysis. The word "following" as used in K.S.A. 1994 Supp. 21-3438 is not sufficiently vague so as to render its meaning incomprehensible and, thus, its use does not make the statute unconstitutionally vague. Instead, the vagueness problem in K.S.A. 1994 Supp. 21-3438 lies with its use of the terms "alarms", "annoys" and "harasses" without any sort of a definition or an objective standard to measure the prohibited conduct.

Other states have enacted stalking statutes which do not suffer with the same vagueness problems found in K.S.A. 1994 Supp. 21-3438. A comparison of those statutes to the 1994 version of the Kansas stalking statute serves to highlight the vagueness problems in the Kansas statute.

The first stalking law in the United States was enacted January 1, 1991, by the California Legislature. Because it was the first, the California law served as a model for the 1992 Kansas law as well as for several other states across the country. See Miller, *"Stalk Talk": A First Look At Anti-Stalking Legislation*, 50 Wash. & Lee L. Rev. 1303, 1305 n.18 (1993). Since the passage by California, an additional 48 states have passed stalking laws. See Miller, 50 Wash. & Lee L. Rev. 1303.

California's stalking statute has been the model for many other states. It provides that any person who willfully, maliciously, and repeatedly follows or harasses another person and who makes a credible threat with the intent to place that person in reasonable fear of death or great bodily injury is guilty of the crime of stalking. Cal. Code § 646.9(a) (West 1996 Supp.). It then describes the term "harasses" in terms similar to those used in the Kansas statute to define "course of conduct." Cal. Code § 646.9(e) (West 1996 Supp.). Unlike California, Kansas in its 1994 statute fails to define the terms of "alarms, annoys, or harasses" in relation to an objective standard. Other states using substantially similar legislation include Alabama, Delaware, Idaho, Kentucky, Louisiana, Mississippi, Nebraska, New Jersey, Oklahoma, Rhode Island, South Dakota, Tennessee, Utah, and, prior to the changes in 1994, Kansas. See Ala. Code § 13A-6-90 to -94 (1994); Del. Code Ann. tit. 11, § 1312A (1995); Idaho Code § 18-7905 (Supp. 1995); Ky. Rev. Stat. Ann. § 508.130 to 150 (Michie/Bobbs-Merrill 1994 Supp.); La. Rev. Stat. § 14:40.2 (West 1995 Supp.); Miss. Code Ann. § 97-3-107 (1994); Neb. Rev. Stat. § 28-311.02 to .03 (1994 Supp.); N.J. Stat. Ann. § 2C: 12-10 (West 1995); Okla. Stat. tit. 21, § 1173 (1996 Supp.); R.I. Gen. Laws § 11-59-1 to -3 (1994); S.D. Codified Laws Ann. § 22-19A-1 to -6 (1995 Supp.); Tenn. Code Ann. § 39-17-315 (1995 Supp.); Utah Code Ann. § 76-5-106.5 (1995). Many states that follow the California model do not include the requirement that

the stalker make a credible threat, as this makes the statute more difficult to enforce. See Boychuck, 88 Nw. U.L. Rev. at 779.

Connecticut's statute provides that a person is guilty of stalking when, with the intent to cause another person to fear for his or her physical safety, he or she willfully follows or lies in wait and does cause the other person to reasonably fear for his or her physical safety. Conn. Gen. Stat. § 53a-181d(a). As can be seen, the Connecticut statute, although not requiring a credible threat, does require that the person intend to cause fear and reasonably cause that fear. This is in direct contrast to K.S.A. 1994 Supp. 21-3438, which requires only the intent to follow and uses a subjective test to determine when conduct alarms, annoys, or harasses.

Georgia's statute requires that the person follow or contact the victim for the purpose of harassing or intimidating the victim. Harassing and intimidating are defined by the statute to mean a willful course of conduct which causes emotional distress by placing such person in reasonable fear of death or bodily harm to himself or herself or to a member of his or her immediate family. Ga. Code Ann. § 16-5-90 (1995 Supp.). Once again, differences between this law and K.S.A. 1994 Supp. 21-3438 are obvious. Georgia's law defines conduct in terms of a reasonable person, unlike the 1994 law in Kansas.

Michigan's stalking law defines stalking as a willful course of conduct involving repeated or continued harassment that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and which actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested. Mich. Comp Laws. § 750.411h(1)(d) (1996 Supp.). The difference between this statute and the more vague Kansas statute is obvious.

Many of the above-mentioned stalking laws have withstood challenges for vagueness. See *People v. Heilman*, 25 Cal. App. 4th 391, 30 Cal. Rptr. 2d 422 (1994); *State v. Culmo*, 43 Conn. Supp. 46; *Johnson v. State*, 264 Ga. 590, 449 S.E. 2d 94 (1994); *People v. White*, 212 Mich. App. 298, 536 N.W. 2d 876 (1995); *State v. Saunders*, 886 P.2d 496 (Okla. 1994). However, the above statutes are fundamentally different from K.S.A. 1994 Supp. 21-3438 in that

they set an objective standard for determining when conduct is harassing, rather than the vague, subjective standard found in the Kansas statute. These statutes eliminate the problems associated with the use of subjective terms such as "alarms" and "annoys" that the United States Supreme Court found so problematic in *Coates*.

Under the Kansas statute, the accused may follow another, and the act of following itself may be willful and wrongful without just cause or excuse. Whether a crime is committed depends upon whether the following "seriously alarms, annoys or harasses" the other person. One must therefore ask: Will this person whom I intend to follow be seriously alarmed, annoyed, or harassed by my act? If so, then a crime will be committed. If, however, the "following" will not seriously alarm, annoy, or harass the other person, no crime will be committed.

The facts of this particular case are not contained in the record. From the comments of the attorneys at oral argument, it appears that the charge in this case arose from the defendant's following of another student at the University of Kansas. Apparently, the following occurred after a relationship between the two had failed. Assume, for the sake of argument, that the defendant, after the relationship had terminated, had been told by the victim in this case to stay away and to leave her alone in the future. The next day, the defendant sees the victim on campus and wishing to talk to her one last time about their relationship, follows her to one of her classes. This act of following is certainly intentional and may be malicious as she has specifically advised him to stay away. Assume further that the victim discovers him following her and calls the campus police before entering her next class. Whether the crime of stalking has been committed under the 1994 statute will depend upon whether the State can prove beyond a reasonable doubt that the victim was seriously annoyed, alarmed, or harassed by the defendant's willful and malicious following. If the finder of fact is convinced that the victim was seriously annoyed, alarmed, or harassed, the defendant is guilty.

The danger in this situation is obvious. In the absence of an objective standard, the terms "annoys," "alarms" and "harasses" subject the defendant to the particular sensibilities of the individual

victim. Different persons have different sensibilities, and conduct which annoys or alarms one person may not annoy or alarm another. The victim may be of such a state of mind that conduct which would never annoy, alarm, or harass a reasonable person would seriously annoy, alarm, or harass this victim. In such a case, the defendant would be guilty of stalking, a felony offense, under the 1994 statute, even though a reasonable person in the same situation would not be alarmed, annoyed, or harassed by the defendant's conduct.

Contrast this statutory language with language requiring that the following must be such that it would cause "a reasonable person to suffer substantial emotional distress" or place such person in reasonable fear for such person's safety. At the very least, under this language the finder of fact would not be left with the subjective state of mind of the victim as the determining factor but instead would have an objective reasonable person standard by which to determine whether the defendant committed the crime. Similarly, just as the finder of fact would be provided with an objective standard, so too would anyone subject to this law be provided with an objective standard to determine what conduct would constitute the crime of stalking. In the stalking statute's 1994 form, persons of common intelligence must necessarily guess at its meaning and differ as to its application. See *State v. Dunn*, 233 Kan. 411, 418, 662 P.2d 1286 (1983). K.S.A. 1994 Supp. 21-3438 is unconstitutionally vague on its face.

As a final argument, the State argues that stalking under K.S.A. 1994 Supp. 21-3438 is a specific intent crime and, therefore, should be upheld in the face of a vagueness challenge. In support, the State cites *State v. Rose*, 234 Kan. 1044, 1046, 677 P.2d 1011 (1984), wherein this court stated "[a] statute is . . . more readily upheld against a charge of vagueness if the offense is one which requires a specific intent." The State argues that because K.S.A. 1994 Supp. 21-3438 requires an intentional following, it is a specific intent crime.

The State's argument is not well taken. Although K.S.A. 1994 Supp. 21-3438 does require an intentional following, it does not require that the person specifically intend to alarm, annoy, or ha-

rass the victim. As such, the mere intent to follow does little to ameliorate the statute's vagueness.

Affirmed.