NOT DESIGNATED FOR PUBLICATION

Nos. 113,456
113,457

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SHAWNDELL MAYS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; R. WAYNE LAMPSON, judge. Opinion filed April 26, 2019. Affirmed in part, reversed in part, and remanded with directions.

*Christopher Mann*, of Mann Law Firm, P.A., of Lenexa, for appellant, and *Shawndell Mays*, appellant pro se.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr*., district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MALONE and POWELL, JJ.

PER CURIAM: This consolidated appeal has taken a very unorthodox procedural path to reach this panel. In 2001, a jury convicted Shawndell Mays of two counts of first-degree murder, two counts of attempted first-degree murder, two counts of criminal possession of a firearm by a juvenile, and one count of conspiracy to commit first-degree murder. Mays' convictions were affirmed on appeal by the Kansas Supreme Court in *State v. Mays*, 277 Kan. 359, 385, 85 P.3d 1208 (2004). In 2006, Mays moved for relief under K.S.A. 60-1507 based on a variety of grounds, including ineffective assistance of

1

counsel. Unfortunately, the motion was not ruled upon for several years and Mays filed a petition for writ of mandamus in 2010. After counsel was appointed to represent Mays, his attorney filed another K.S.A. 60-1507 motion on his behalf in 2012 and supplemented it in 2013. The district court ultimately dismissed both motions following a nonevidentiary hearing. Thereafter, Mays appealed.

On October 27, 2016, this court remanded the K.S.A. 60-1507 motion filed in 2006 to the district court for further proceedings but retained jurisdiction over the appeals. On remand, the district court held a hearing on December 22, 2016, and the district court filed a Journal Entry on March 7, 2017, in which it again denied the 2006 motion. Thereafter, the matter was returned to this court and the parties briefed the issues. In addition, Mays filed a supplemental pro se brief in which he asserted two additional issues. Although we do not find the majority of Mays' arguments to be persuasive, we do find that the district court should have held an evidentiary hearing on some of the issues relating to the effectiveness of his trial counsel. Thus, we affirm in part, reverse in part, and remand for an evidentiary hearing.

FACTS

In affirming Mays' convictions, the Kansas Supreme Court summarized the underlying facts as follows:

"This case involved two separate drive-by shootings in January 2000. The first occurred on the night of January 24, 2000. According to the testimony of Marcus Quinn, he and Joseph Morton were sitting and talking in a car parked in an empty lot across the street from Quinn's home near 20th Street and Longwood in Kansas City, Kansas. While sitting there, Quinn saw a red truck. About 30 minutes later, Quinn saw the same red truck followed by a car. This time the truck stopped and its occupants shot multiple times at the Chevrolet Caprice in which Morton and Quinn were sitting. Quinn testified that the right side of his head was grazed, but he was not seriously injured. Morton ran away from the scene, but later died at a hospital. The second shooting occurred on the afternoon of

2

January 26, 2000. Christopher Union and Lee Brooks were driving a white pickup truck near 30th and Spring when gunshots were fired at the truck. Both Brooks and Union were injured; Union died from his injuries.

"The police investigation of the two shooting incidents eventually led to the custodial interrogations of Michael White, Shawndell Mays, Keith Mays, Peter Davis, and Carvell England on January 27, 2000. (Shawndell Mays will be referred to throughout this opinion as Mays; Keith Mays will be referred to by first and last name.) All of them talked to the investigators, describing the events of the two shootings to various degrees, with Mays and White admitting to firing shots during both incidents and all of them admitting to being a witness to one or both occurrences. Mays was 16 years old at the time of the shootings; he turned age 17 on January 29, 3 days after the second shooting.

"In the same information, the State charged White, Mays, Davis, Keith Mays, and England with various charges relating to the shootings on January 24, January 26, or both. Three of the codefendants, including Mays, were juveniles. The court authorized the State to prosecute the three as adults pursuant to K.S.A. 38-1536(a)(2). The five codefendants' joint trial lasted nearly 3 weeks, during which 39 witnesses testified. The redacted statements of each of the five codefendants were played for the jury over defense counsels' objections. Generally, all of the codefendants denied the allegations and, through cross-examination of the State's witnesses, sought to create reasonable doubt. Each codefendant also generally relied upon a self-defense theory.

"The jury convicted Mays of two counts of first-degree murder, two counts of attempted first-degree murder, two counts of criminal possession of a firearm by a juvenile, and one count of conspiracy to commit first-degree murder. The jury also convicted Davis and White of various charges but acquitted Keith Mays and England of all charges." *Mays*, 277 Kan. at 362-63.

Mays filed a pro se K.S.A. 60-1507 motion on June 29, 2006. In his motion, Mays asserted various trial errors and numerous claims of ineffective assistance of trial and appellate counsel. Evidently, the motion languished in the system for several years with little or no action being taken. As such, Mays filed a petition for a writ of mandamus on July 16, 2010, in which he brought the matter to the district court's attention.

3

On August 31, 2011, the district court appointed counsel to represent Mays on his K.S.A. 60-1507 motion. After the first attorney appointed to represent him failed to appear at a hearing, the district court appointed another attorney to represent Mays. The new attorney filed a second K.S.A. 60-1507 motion on behalf of Mays on November 5, 2012. Moreover, counsel supplemented the K.S.A. 60-1507 motion on September 30, 2013.

After a holding a nonevidentiary hearing, the district court granted the State's motion to dismiss on December 5, 2013. Mays filed two notices of appeal and this court consolidated the appeals on May 27, 2015. Subsequently, Mays filed a motion to remand the K.S.A. 60-1507 motion filed in 2006 to the district court for a hearing because the district court had failed to adequately address the issues raised in that motion. This court agreed and entered an order on October 27, 2016, remanding this matter to the district court "for the limited purpose of allowing for proceedings on the K.S.A. 60-1507 claim that was filed [in 2006]" However, this court retained jurisdiction over the consolidated appeal.

On December 22, 2016, the district court held a hearing to consider the K.S.A. 60-1507 motion filed by Mays in 2006. Although the district court and the parties suggest that this was an "evidentiary hearing," a review of the transcript reveals that no witnesses were called and no evidence was presented. Instead, the district court heard oral arguments from counsel on the issues presented. Following the hearing, the district court took the matter under advisement. On March 6, 2017, the district court entered an order denying the claims asserted by Mays in the K.S.A. 60-1507 motion filed in 2006.

On April 20, 2017, this court lifted the stay issued in this consolidated appeal and issued a briefing schedule. Because Mays failed to file a brief in a timely manner, we dismissed the consolidated appeal on November 2, 2017. However, on March 26, 2018, Mays filed a motion to reinstate the consolidated appeal based on the factors in *State v.*

4

*Ortiz*, 230 Kan. 733, Syl. ¶¶ 1-3, 640 P.2d 1255 (1982). Our court agreed and reinstated the appeal. Now that the parties have fully briefed the issues presented, this matter is now ready for decision.

ANALYSIS

*Standard of Review*

At the outset, this case presents a very unusual question—did the district court hold an evidentiary hearing on either or both motions? The answer to this question is significant because our standard of review depends on the procedure followed by the district court. Although the district court and the parties all suggest that an evidentiary hearing was held on December 22, 2016, we have reviewed the hearing transcript and find nothing to indicate that evidence was presented. Likewise, we have scrutinized the record on appeal and can find nothing to indicate that Mays has ever been afforded the opportunity to present evidence over the many years that the K.S.A. 60-1507 motions were pending.

A district court has three options when handling a K.S.A. 60-1507 motion:

"'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citation omitted.]" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

Because we can find nothing in the record to establish that the district court held a "full hearing" or that Mays ever turned down the opportunity to present evidence, we

5

conduct a de novo review to determine whether the motion, files, and records of the case conclusively establish that Mays is not entitled to relief. See *Sola-Morales*, 300 Kan. at 881.

The right to counsel in criminal cases is provided by the Sixth Amendment to the United States Constitution:

> "'The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This right to counsel is applicable to state proceedings under the Fourteenth Amendment. *Miller v. State*, 298 Kan. 921, 929, 318 P.3d 155 (2014). This guarantee includes the right to more than the mere presence of counsel[. It] also [includes] the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267, 104 S. Ct. 3562, 82 L. Ed. 2d 864 (1984); see also *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985) (adopting *Strickland*). We have acknowledged that "[t]he purpose of the effective assistance guarantee 'is simply to ensure that criminal defendants receive a fair trial.'" *State v. Galaviz*, 296 Kan. 168, 174, 291 P.3d 62 (2012) (quoting *Strickland*, 466 U.S. at 689.'" *Fuller v State*, 303 Kan. 478, 486, 363 P.3d 373 (2015).

Similarly, the Kansas Constitution Bill of Rights § 10 and K.S.A. 22-4503 enshrine the right to effective counsel. See *State v. Lawson*, 296 Kan. 1084, 1093-94, 297 P.3d 1164 (2013); Kan. Const. Bill of Rights § 10.

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) that the performance of trial counsel was deficient under the totality of the circumstances, and (2) that the movant suffered prejudice—in other words, that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales*, 300 Kan. at 882 (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]). The burden to

6

establish ineffective assistance of counsel is on the movant. *Fuller*, 303 Kan. at 486; *State v. Jackson*, 255 Kan. 455, 463, 874 P.2d 1138 (1994).

The benchmark for determining an ineffective assistance of counsel claim is whether the attorney's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a fair and just result. *Bledsoe v. State*, 283 Kan. 81, 90, 150 P.3d 868 (2007). Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of the totality of the evidence before the judge or jury. See *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). "[A] fair assessment of attorney performance requires that every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Crowther v. State*, 45 Kan. App. 2d 559, 564, 249 P.3d 1214 (2011).

To establish prejudice, the defendant must demonstrate a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015). Where a movant cannot demonstrate the prejudice prong of *Strickland*, the court need not consider whether error actually occurred. See *Edgar v. State*, 294 Kan. 828, 830, 283 P.3d 152 (2012). Prejudice is demonstrated by a showing that there was a reasonable probability that, but for counsel's error, the outcome of the hearing would have been different. 294 Kan. at 829.

If counsel has made a strategic decision after making a thorough investigation of the law and the facts relevant to the realistically available options, then counsel's decision is virtually unchallengeable. Strategic decisions made after a less than comprehensive investigation are reasonable exactly to the extent a reasonable professional judgment

7

supports the limitations on the investigation. *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013). Here, it is impossible to determine trial counsel's strategy because trial counsel has not testified nor has any other evidence been presented.

*Failure to Challenge the Constitutionality of K.S.A. 21-3401*

Mays contends that his convictions should be reversed because his trial attorney did not challenge the constitutionality of K.S.A. 21-3401. Specifically, he argues that the first-degree murder statute is unconstitutional for failing to provide a definition of premeditation. Mays asserts that because no definition is provided, the statute is so vague that it fails to give ordinary people fair notice of the conduct it punishes and invites arbitrary enforcement in violation of the Fifth Amendment to the Constitution of the United States. We disagree.

The question of whether a statute is constitutional presents a question of law subject to unlimited review. *State v. Bollinger*, 302 Kan. 309, 318, 352 P.3d 1003 (2015), *cert. denied* 136 S. Ct. 858 (2016). In reviewing a statute, the appellate courts presume statutes are constitutional and must resolve all doubts in favor of a statute's validity. Courts must interpret a statute in a way that makes it constitutional if there is any reasonable construction that would maintain the Legislature's apparent intent. *State v. Petersen-Beard*, 304 Kan. 192, 194, 377 P.3d 1127 (2016), *cert. denied* 137 S. Ct. 226 (2016).

To determine whether a criminal statute is unconstitutionally vague, the appellate courts employ a two-part test. First, the court assesses whether the statute gives adequate warning of the proscribed conduct. A statute is unconstitutionally vague if it fails to "'provide a person of ordinary intelligence fair notice of what is prohibited.' [Citations omitted.]" *Bollinger*, 302 Kan. at 318. In the second step, the court determines whether

the statute adequately guards against arbitrary and unreasonable enforcement. 302 Kan. at 318.

> "It is difficult for a challenger to succeed in persuading a court that a statute is facially unconstitutional. Such challenges are disfavored, because they may rest on speculation, may be contrary to the fundamental principle of judicial restraint, and may threaten to undermine the democratic process. It is easier for a challenger to succeed in persuading a court that a statute is unconstitutional as applied to that particular challenger. [Citations omitted.]" 302 Kan. at 318-19.

A void for vagueness challenge is based on the due process requirement that a statute's language must convey a sufficient warning of the conduct proscribed when measured by common understanding and practice. *State v. Adams*, 254 Kan. 436, 438, 866 P.2d 1017 (1994). A statute must also adequately guard against arbitrary and discriminatory enforcement. *State v. Bryan*, 259 Kan. 143, 146, 910 P.2d 212 (1996). A statute is unconstitutionally vague if it "'forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application . . . .'" *Adams*, 254 Kan. at 439 (quoting *State v. Dunn*, 233 Kan. 411, 418, 662 P.2d 1286 [1983]).

Vague laws offend several important values by impermissibly delegating basic policy matters to policemen, judges, and juries for resolution on a subjective basis, with the dangers of arbitrary and discriminatory application. *State v. Taylor*, No. 109,147, 2014 WL 113451, at *4 (Kan. App. 2014) (unpublished opinion). See *City of Wichita v. Hackett*, 275 Kan. 848, 854, 69 P.3d 621 (2003). Significantly, a statute is not unconstitutionally vague if its words are commonly used, judicially defined, or have a settled meaning in law. *Hackett*, 275 Kan. at 853-54.

Here, Mays was convicted of premeditated murder under K.S.A. 21-3401. At trial, the jury was instructed that "[p]remediation means to have thought the matter over

9

beforehand," as set forth in PIK Crim. 3d 56.04(b). As the State points out in its brief, the Kansas Supreme Court has rejected challenges to K.S.A. 21-3401 that are similar to the one asserted by Mays. See *State v. Groschang*, 272 Kan. 652, 668, 36 P.3d 231 (2001). Furthermore, our Supreme Court "has approved the PIK definition of premeditation in a series of cases." *State v. Lawrence*, 281 Kan. 1081, 1090-91, 135 P.3d 1211 (2006) (citing *State v. Martis*, 277 Kan. 267, 302, 83 P.3d 1216 [2004]); *State v. Hebert*, 277 Kan. 61, 89, 82 P.3d 470 (2004); *State v. Pabst*, 273 Kan. 658, 661-63, 44 P.3d 1230 (2002); *State v. Jamison*, 269 Kan. 564, 573, 7 P.3d 1204 (2000).

Mays fails to cite to any caselaw in support of his position that K.S.A. 21-3401 is unconstitutionally vague. In addition, he does not assert that the cases handed down by our Supreme Court on this issue were wrongly decided. Accordingly, we conclude that Mays has failed to establish his trial counsel was ineffective for failing to challenge K.S.A. 21-3401 for vagueness or that the result of his trial would have been different had she done so.

*Failure to Challenge Legality of Confession*

Next, Mays contends that his trial counsel was ineffective because she failed to challenge the legality of his confession under 18 U.S.C. § 5033, which addresses the procedure to be followed when a juvenile is taken into federal custody. Mays argues that his attorney should have challenged his confession because he was apprehended by the Fugitive Apprehension Task Force and, as a result, federal jurisdiction was invoked. Mays claims there is a reasonable probability that had his attorney challenged his confession under 18 U.S.C. § 5033, the result of the motion to suppress would have been different. Again, we disagree.

We note from a review of the record that trial counsel did attempt to suppress Mays' confession. Ultimately, the district court denied Mays' motion to suppress and

admitted his statement into evidence at trial. On appeal, our Supreme Court evaluated the voluntariness of Mays' confession and concluded that "it was not error to determine that [Mays'] waiver of his *Miranda* rights was knowing, voluntary, and intelligent." *Mays*, 277 Kan. at 377. However, it does not appear that the issue of suppression under 18 U.S.C. § 5033 was presented on direct appeal.

Title 18 U.S.C. § 5033 provides:

"Whenever a juvenile is taken into custody for an alleged act of juvenile delinquency, the arresting officer shall immediately advise such juvenile of his legal rights, in language comprehensive to a juvenile, and shall immediately notify the Attorney General and the juvenile's parents, guardian, or custodian of such custody. The arresting officer shall also notify the parents, guardian, or custodian of the rights of the juvenile and of the nature of the alleged offense.

"The juvenile shall be taken before a magistrate forthwith. In no event shall the juvenile be detained for longer than a reasonable period of time before being brought before a magistrate judge."

K.S.A. 22-2102 mandates that the Kansas Code for Criminal Procedure "shall govern proceedings in all criminal cases in the courts of the state of Kansas." The Kansas Code for Criminal Procedure does not adopt—in whole or in part—federal criminal procedure. Moreover, we find nothing in the plain language of 18 U.S.C. § 5033 or in cases interpreting the federal law to mandate its application in state courts. Likewise, Mays cites no authority supporting his position that 18 U.S.C. § 5033 applies in state court proceedings.

Although we are aware of no Kansas case interpreting the application of 18 U.S.C. § 5033, federal courts have held that "a federal arrest or a federal charge is a necessary prerequisite to the statute's application. [Citation omitted.]" *United States v. Doe*, 155 F. 3d 1070, 1076 (9th Cir. 1998). In *Doe*, which involved a defendant in tribal custody, the

United States Court of Appeals for the Ninth Circuit found the United States Supreme Court's opinion in *United States v. Alvarez-Sanchez*, 511 U.S. 350, 114 S. Ct. 1599, 128 L. Ed. 2d 319 (1994), to be instructive. The United States Supreme Court held in *Alvarez-Sanchez* that the protections of 18 U.S.C. § 3501(c) (delay in bringing person before a magistrate) did not apply to a person questioned by a federal officer while being held on state charges. 511 U.S. at 358-59.

In *Doe*, the Ninth Circuit found the reasoning in *Alvarez-Sanchez* to be persuasive because both 18 U.S.C. § 5033 and 18 U.S.C. § 3501(c) address "someone being taken into 'custody' by an 'arresting officer.'" *Doe*, 155 F.3d at 1077. The Ninth Circuit also found that 18 U.S.C. § 5033 did not apply when the defendant was merely being questioned by the federal officer. It stated that the defendant in *Doe* "was being held on tribal charges of aggravated assault only. There is no doubt that he was in custody, but that custody was tribal and therefore did not trigger the protections of § 5033." 155 F.3d at 1077.

The Ninth Circuit did note in *Doe* that under special circumstances, a person may be deemed to be in federal custody "where there is a 'working arrangement' between the federal and tribal officers to deprive a suspect of federal procedural rights." 155 F.3d at 1078 (citing *United States v. Leeds*, 505 F.2d 161, 163-64 [10th Cir. 1974]). In this case, even though there were federal agents involved in Mays' arrest, there is no allegation of collaboration between federal and state authorities to deprive him of his rights under 18 U.S.C. § 5033. Under these circumstances, we conclude that Mays has failed to establish his trial counsel was ineffective for failing to challenge the admissibility of his confession under 18 U.S.C. § 5033.

12

*Failure to Object to Exclusion of Ex-Felons from Venire Panel*

Mays also contends that his trial counsel was ineffective for failing to object to the exclusion of ex-felons from the jury panel in violation of the Sixth Amendment right to be tried by an impartial jury that reflects a fair cross section of the community. Specifically, Mays complains that his trial counsel should have objected to the exclusion of three potential jurors who evidently had felony records. Mays claims the failure to object to the exclusion of jurors with a prior felony "ultimately worked to [his] disadvantage" by depriving the jury panel of an ex-felon's views on sending a juvenile to prison. We find this argument to be unpersuasive.

K.S.A. 43-158(c) provides that those persons who have been convicted of a felony in the last 10 years "shall be excused from jury service" by the district court. Mays alleges this statute is unconstitutional because it deprives criminal defendants the right to be tried by an impartial jury that reflects a fair cross section of the community. See *Berghuis v. Smith*, 559 U.S. 314, 319, 130 S. Ct. 1382, 176 L. Ed. 2d 249 (2010). To establish a violation of the Sixth Amendment's fair cross section requirement, a defendant must show:

> "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Durren v. Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979).

A distinctive group is one that is recognizable, distinct, and singled out for different treatment under the law. *Castaneda v. Partida*, 430 U.S. 482, 494, 97 S. Ct. 1272, 51 L. Ed. 2d 498 (1977). Distinctive groups are generally comprised of immutable characteristics such as race or color. See *Hernandez v. Texas*, 347 U.S. 475, 478, 74 S.

13

Ct. 667, 98 L. Ed. 866 (1954). However, other characteristics may create distinctive groups:

> "[C]ommunity prejudices are not static, and from time to time other differences from the community norm may define other groups which need the same protection. Whether such a group exists within a community is a question of fact. When the existence of a distinct class is demonstrated, and it is further shown that the laws, as written or applied, single out that class for different treatment not based on some reasonable classification, the guarantees of the Constitution have been violated." 347 U.S. at 478.

Without providing any authority to support his position, Mays claims that convicted felons are a distinctive group in Wyandotte County and should be afforded protection from being excluded from the venire panel. He claims that excluding convicted felons from jury panels is not fair or reasonable. Mays asserts that the underrepresentation of prior felons in Wyandotte County is due to systemic exclusion.

In *State v. Ji*, 251 Kan. 3, 8, 832 P.2d 1176 (1992), our Supreme Court rejected a defendant's challenge to the constitutionality of K.S.A. 43-158(a) on the basis that it excluded those persons unable to read, write, and understand English with a degree of proficiency sufficient to fill out the jury questionnaire. In *State v. Baker*, 249 Kan. 431, 436-37, 819 P.2d 1173 (1991), our Supreme Court analyzed the Kansas statutes relating to jury panels—including K.S.A. 43-158—and held the statutes were "not violative of defendant's constitutional and statutory right to a jury that is a fair cross section of the community." 249 Kan. 431, Syl. ¶ 1. Similarly, federal courts have upheld statutes excluding felons from jury panels as constitutional because the exclusion is rationally related to the legitimate governmental purpose of guaranteeing the probity of jurors. See *United States v. Foxworth*, 599 F.2d 1, 4 (1st Cir. 1979); see also *United States v. Best*, 214 F. Supp. 2d 897, 904-05 (N.D. Ind. 2002) (the exclusion of convicted felons from juries is a constitutional limitation on jury qualifications).

14

In *United States v. Greene*, 995 F.2d 793, 796 (8th Cir. 1993), the United States Court of Appeals for the Eighth Circuit expressly rejected a claim that the exclusion of felons is impermissible because it has a disparate impact on potential jurors who are African-American. In *Greene*, the Eighth Circuit noted that one of the purposes of the fair cross section requirement is to preserve "'public confidence in the fairness of the criminal justice system.'" 995 F.2d at 797 (quoting *Taylor v. Louisiana*, 419 U.S. 522, 530, 95 S. Ct. 692, 42 L. Ed. 2d 690 [1975]). The *Greene* court concluded:

> "Since we accept the proposition that the exclusion is rationally related to the legitimate governmental purpose of assuring the unquestionable integrity of jurors and selecting jurors who are likely to be unbiased, it is only a small step to accepting the proposition that the significant governmental interest in having jurors who can be relied upon to perform their duties conscientiously, and in accordance with the law, is an 'adequate justification,' for the 'infringement of the defendant's interest in a jury chosen from a fair community cross section.' We therefore affirm the trial court on its holding that Mr. Greene proved no violation of the constitutional guarantee of juries chosen from a fair cross-section of the community." [Citations omitted.] 995 F.2d at 798.

Here, Mays has not shown that ex-felons constitute a distinctive group nor has he shown that their exclusion from jury service violates the Sixth Amendment. He has not cited any cases finding that such a provision violates the Sixth Amendment, and there is substantial caselaw from federal courts that have rejected similar arguments. Therefore, we conclude that Mays has failed to establish his trial counsel was ineffective for failing to object to the exclusion of ex-felons from the venire panel.

*Failure to Object to State's Alleged Misstatement of Law*

In addition, Mays contends that his trial counsel was ineffective for failing to object to the alleged misstatement of the elements of aiding and abetting during voir dire. He argues that the prosecutor failed to explain that in order to be convicted of aiding and abetting first-degree murder, the State must prove that he intentionally aided and abetted

15

a first-degree murder. In particular, Mays claims the prosecutor misstated the law when he explained that a person who "'does just a little bit to aid'" may be convicted of aiding and abetting first degree murder. In response, the State denies that the prosecutor misstated the law on aiding abetting.

During voir dire, the prosecutor informed the potential jurors:

"I don't have the instruction in front of me and I have to step into the Court's shoes because the Court's going to instruct you and tell you what the law is. But to paraphrase that instruction, it talks about the amount—sorry, I don't remember the exact language it uses, but it talks about someone who does just a little bit to aid and someone who does a lot to aid can be found equally guilty with the person who actually does it."

The prosecutor then posed the following scenario:

"[L]et's say we just put three cases out in front of you, one who actually does the killing and one who just does a little bit to aid in the killing, one who does a lot to aid in the killing, could you *given that all things are proven too*, of course, beyond a reasonable doubt, could you find all three of them guilty or only some?" (Emphasis added).

We note that the prosecutor attempted to make it clear to the jury that it is the State's burden to prove all the elements of a crime—including the intent of the defendant. The State's burden of proof was also set forth in the instructions given to the jury after the evidence was presented. Furthermore, the district court properly instructed the jury on the principles of aiding and abetting and the requisite mental culpability. Thus, we find no error.

Even if the prosecutor's statements constituted error, we find it to be harmless error under the circumstances presented. See *State v. Rivera*, 48 Kan. App. 2d 417, 444, 291 P.3d 512 (2012) (a misstatement of law in a preliminary jury instruction can be cured by the district court submitting the correct instruction to the jury at the end of trial). In

16

light of the instructions given by the district court as well as the time between the alleged misstatements and the case being submitted to the jury, we find that any error was cured. As such, we conclude that Mays has failed to establish his trial counsel was ineffective for failing to object to the prosecutor's statements made during voir dire regarding the elements of aiding and abetting.

*Failure to Assert a Theory of Self-Defense*

Mays further contends that his trial counsel was ineffective for failing to raise self-defense at trial. He argues that his attorney should have mentioned his theory of self-defense during opening statements. Also, Mays claims that his attorney should have advised him of the need to testify in support of his theory of self-defense. In addition, Mays points to the fact that trial counsel failed to present evidence regarding the shooting death of Mays' 10-year-old cousin, which he claims supports his self-defense theory.

Although the State contends that Mays waived this issue by failing to cite to the record with specificity, we note that his allegations are primarily based on claims regarding things that trial counsel failed to do. It is difficult—if not impossible—to point to specific places in the record under these circumstances. Furthermore, we find that Mays' claims relating to the theory of self-defense were adequately set out in his original K.S.A. 60-1507 motion.

In particular, Mays outlined the following concerns in the K.S.A. 60-1507 motion he filed in 2006:

"(I) TRIAL COUNSEL GAVE A ONE MINUTE OPENING STATEMENT WHERE SHE FAILED TO EXPRESS WHAT SHE THOUGHT THE EVIDENCE WOULD PROVE IN FAVOR OF MOVANT, NOR DID SHE RELATE WHAT THE DEFENSE WOULD BE SO THE JURY COULD BE EVALUATING THE EVIDENCE PRESENTED IN A LIGHT OF MOVANT'S ASSERTED DEFENSE.

17

. . . .

"(K) TRIAL COUNSEL FAILED TO INTRODUCE EVIDENCE OF THE SHOOTING DEATH OF MOVANT'S COUSIN, [C.C.], WHICH WAS THE ENTIRE BASIS OF THE ASSERTED DEFENSE THAT MOVANT'S ACTIONS WERE PREDICATED UPON A BELIEF THAT HIS LIFE WAS IN IMMEDIATE DANGER, AND THE BASIS FOR THAT BELIEF WAS THE SHOOTING DEATH OF HIS COUSIN AND MATTERS RELATED THERETO. MOVANT HAD AN ABSOLUTE RIGHT TO PRESENT ANY AND ALL EVIDENCE RELATED TO HIS STATE OF MIND AND HIS BELIEFE THAT HIS LIFE WAS IN DANGER.

"(L) TRIAL COUNSEL FAILED TO ADVISE MOVANT OF THE NEED FOR HIM TO TAKE THE STAND IN HIS OWN DEFENSE, AND SHE FAILED TO CALL HIM TO THE STAND, WHICH WAS REQUIRED TO ESTABLISH HIS DEFENSE OF SELF DEFENSE. WITHOUT MOVANT TESTIFYING IN HIS OWN DEFENSE THE JURY WAS LEFT WITH ABOSLUTELY NO EVIDENCE TO RULE IN HIS FAVOR ON THE ISSUE BECAUSE NOTHING ESTABLISHED THAT HE WAS IN IMMEDIATE APPREHENSION OF GREAT BODILY HARM."

On appeal, Mays cites to *State v. Johnson*, No. 111,339, 2015 WL 3632205, at *5 (Kan. App. 2015) (unpublished opinion). In that case, the defendant claimed that he chose not to testify at trial in support of his theory of self-defense because he felt that his attorney's failure to discuss the defense during opening statements precluded him from pursuing the theory. On appeal, a panel of our court held that trial counsel's actions were not ineffective because the attorney had explained to his client that his testimony was crucial to support a theory of self-defense. The panel also found that the defendant knowingly made the decision not to testify. 2015 WL 3632205, at *5.

Here, we do not have the benefit of trial counsel's testimony at an evidentiary hearing. Perhaps Mays' attorney could adequately explain her trial strategy and the decisions she made. However, there is simply no way to know based on the record as it currently exists. The State points to the lack of a record to note that there is nothing to indicate that Mays ever told his attorney that he wanted to assert self-defense or that she

18

ever advised him about whether he should testify in support of his theory of self-defense. But this is the type of issue that is best resolved at an evidentiary hearing where the movant and trial counsel both testify regarding the events.

Finally, the State claims that the record shows that trial counsel acted reasonably as a matter of trial strategy. Again, without trial counsel's testimony regarding her trial strategy and the reasons for her decisions, it is impossible to determine. Mays asserts that there is a reasonable probability that the result of his trial would have been different if his attorney had pursued his theory of self-defense in her opening statement, presented evidence of his cousin's death, and properly advised him of the effect of his decision not to testify on a theory of self-defense. Thus, we conclude that it is appropriate to remand this issue to the district court for an evidentiary hearing.

*Failure to Object to the Admission of Hearsay Evidence*

Similarly, Mays contends that his trial counsel was ineffective for failing to object to the admission of certain hearsay statements at trial. Specifically, he claims his attorney should have objected to the admission of hearsay during the testimony of Alberta Bailey, Anthony Dantzler, and Gary Hahn. Further, Mays argues that the admission of the hearsay evidence substantially increased the likelihood of him being convicted on the charge of conspiracy to commit first-degree murder.

Again, the State asserts that Mays has waived this issue because he fails to point to evidence in the trial transcript in support of his assertion. Although he does not directly cite to the hearsay statements made at trial, Mays points to the following hearsay evidence mentioned in the Kansas Supreme Court's decision in his direct appeal:

"Alberta Bailey, a former roommate of Michael White's, testified that White told Bailey and her fiancé to watch the news 'because we smoked that nigger Antwan.' No contemporaneous objection was made. White's counsel then sought to cross-examine

19

Bailey about the statement because there was no victim named Antwan involved in the case. When White's counsel asked Bailey to repeat White's statement, Mays' counsel objected on the grounds of prejudice to Mays and asked that the witness be instructed to use the pronoun 'I' rather than 'we' in order to cure the *Bruton* problem. The trial court overruled Mays' objection, finding there was no confrontation problem. The witness then repeated White's statement.

"Mays also argues there was insufficient evidence to support his conviction of conspiracy to commit first-degree murder. The evidence regarding the conspiracy count consisted of the testimony of Bailey described above, as well as the testimony of two other people who lived in the same crack house as Bailey. Anthony Dantzler testified that White and several other young men, including Mays, came in and out of the house with guns in their hands near the end of January 2000. Dantzler testified that at one point when the young men came back to the house they were happy and jumping around. Dantzler heard something mentioned about a white truck. Union and Brooks were driving a white truck when they were shot.

"Another housemate, Gary Hahn, also testified observing White and his 'buddies' with guns at the house around the time of the shootings. Hahn heard the group talk about going to do a hit before they left the house. When they returned, they were jumping up and down and laughing." *Mays*, 277 Kan. at 383-84.

On direct appeal, our Supreme Court addressed the hearsay issue as follows:

"Mays contends that all of the evidence mentioned above was hearsay and it was inadmissible under the coconspirator exception to the hearsay rule. See K.S.A. 2003 Supp. 60-460(i)(2). In fact, only those portions of the testimony where the witnesses described the young men's statements or conversations were hearsay. The rest of the testimony involved the witnesses' visual observations of the young men and was not hearsay. In any event, Mays did not object to any of the evidence on hearsay grounds.

"A defendant's failure to timely object at trial to alleged hearsay statements precludes the defendant from raising the issue on appeal. *State v. Carr*, 265 Kan. 608, 620, 963 P.2d 421 (1998). This is true even where the defendant alleges a violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution. *State v. Bryant*, 272 Kan. 1204, 1207-08, 38 P.3d 661 (2002)." *Mays*, 277 Kan. at 384-85.

20

We conclude that this issue has been properly preserved and that it should also be addressed at an evidentiary hearing in which Mays has the opportunity to testify, to call his trial counsel as a witness, and to present other evidence. Again, we cannot determine from the record as it currently exists whether there was a legitimate strategic reason for Mays' attorney to permit those portions of the testimony where the witnesses described the statements or conversations of others without asserting a hearsay objection. Thus, we remand this issue to the district court for an evidentiary hearing.

*Failure to Object to Instruction No. 5*

Additionally, Mays contends that his trial counsel was ineffective for failing to object to a jury instruction that he alleges was erroneous. In particular, he contends that Instruction No. 5 shifted the burden of proof to him. The State responds that the instruction was legally proper and that the burden never shifted to Mays.

Instruction No. 5 stated:

"Ordinarily a person intends all of the usual consequences of their voluntary acts. This inference may be considered by you along with all the other evidence in the case. You may accept or reject it in determining whether the State has met its burden to prove the required criminal intent of the defendant. This burden never shifts to the defendant."

In support of his argument, Mays cites *State v. Johnson*, 233 Kan. 981, 985, 666 P.2d 706 (1983). In *Johnson*, the Kansas Supreme Court distinguished between jury instructions that shift the burden of proof and those that properly instruct on a statutory presumption. Our Supreme Court cited with approval the PIK instruction that was used by the district court this case. The instruction does not shift the burden of proof to the defendant nor does it destroy the presumption of innocence. 233 Kan. at 985-86. Therefore, we conclude that Mays has failed to establish his trial counsel was ineffective for failing to object to Instruction No. 5.

21

*Claim of Ineffective Appellate Counsel*

Mays asserts that he was denied the right to effective assistance of appellate counsel. First, he claims that appellate counsel was ineffective for not arguing that his confession should have been suppressed under 18 U.S.C. § 5033. Second, he argues that appellate counsel should have raised the issue on appeal regarding Instruction No. 5. We find both arguments to be meritless.

The test for ineffective assistance of appellate counsel is the same as that for trial counsel. *Miller v. State*, 298 Kan. 921, 930-31, 318 P.3d 155 (2014). Here, we have found as a matter of law that 18 U.S.C. § 5033 has no application in this case. Likewise, we have found as a matter of law that Instruction No. 5 was properly given by the district court. As such, we conclude that Mays has failed to establish that he was denied his right to effective assistance of appellate counsel.

*Withdrawal of Request for Mental Evaluation Prior to Sentencing*

In a pro se supplemental brief, Mays contends that his trial counsel was ineffective for withdrawing her request for an additional competency hearing and proceeding to sentencing. Prior to sentencing, the district court ordered a competency evaluation at the defendant's request. However, before the evaluation was completed, Mays' attorney withdrew the request for an evaluation on the day of sentencing. As a result, the district court sentenced Mays without having the benefit of an evaluation report.

We note from the record that Mays' competency was an issue prior to trial. It was also an issue in his direct appeal. As our Supreme Court noted in its decision, there was evidence that Mays had a low IQ, used drugs, and suffers from Post-Traumatic Stress Disorder (PTSD) as a result of his cousin's traumatic death. *Mays*, 277 Kan. at 372-77. The current issue involves Mays' mental competency at the time of sentencing.

22

At the hearing held on December 22, 2016, the attorney representing Mays on his K.S.A. 60-1507 motions stated: "At sentencing, the court had authorized having a mental evaluation by Dr. Logan. I think that [Mays] was supposed to go to a state hospital after that. They didn't go ahead and do that. They didn't get that second evaluation."

In response, the district court inquired why the evaluation was not completed:

"THE COURT: And why weren't they followed through? Does anyone know?

"Do you know, Mr. Mays?

"MR. MAYS: Yes.

"THE COURT: Tell me.

"MR. MAYS: During the time they stopped my sentencing and they continued it from the rest of my codefendants. So—

"THE COURT: Were you the only juvenile of the bunch?

"MR. MAYS: Yes, that actually got found guilty.

"THE COURT: Okay. You're the only juvenile that was convicted then in this group?

"MR. MAYS: Yes.

"THE COURT: Okay.

"MR. MAYS: In the transcripts he gave, Jerry Gorman was supposed to take over the proceedings to make sure, I guess, the funding or however it was supposed to get done. He offered to take over that.

"THE COURT: The funding for what?

"MR. MAYS: For the evaluation.

"THE COURT: For the evaluation?

"MR. MAYS: Yeah, so at that time—

"THE COURT: That would be unusual.

"MR. MAYS: I mean, it's all right here in the transcripts, though.

"THE COURT: Okay.

"MR. MAYS: So at that time I had to wait on the evaluation or whatever to get done. But then my attorney came back and told me during sentencing—he's, like, we're about to go on with the sentencing proceedings because she said that the State didn't pay for Dr. Logan so they're not going to pay for these other evaluations to get done. So we just ought to go on and get through the sentence."

23

In the Journal Entry filed on March 7, 2017, the district court concluded that Mays "fails to show that a second evaluation would have given any different information to the Court, or that he would have been given any different sentence." On appeal, Mays argues that the second mental evaluation should have been performed due to his age, his competency to understand the proceedings, and his PTSD.

It is impossible for us to determine from the record why the request for a second mental evaluation was withdrawn. We do know that Mays received two consecutive hard 25 life sentences in the underlying criminal case. Had the evaluation been performed, it is possible that it would have provided mitigating factors that could have resulted in a lighter sentence. Thus, we find that this issue should also be remanded to the district court for an evidentiary hearing to determine whether trial counsel was ineffective based on her withdrawal of the request for a second mental evaluation to be completed prior to sentencing.

*Failure to Object to the Length of Sentence*

Finally, Mays contends in his supplemental brief that his trial counsel was ineffective for failing to object to his sentence on the grounds that it violated the Eighth Amendment prohibiting cruel and unusual punishment. Mays argues that his sentence is unconstitutional because he was a juvenile when he committed the crimes. Mays asserts both a case-specific challenge and a categorical challenge.

A case specific challenge cannot be raised for the first time on appeal because the district court was not given the opportunity to make factual findings. See *State v. Williams*, 298 Kan. 1075, 1084-85, 319 P.3d 528 (2014). A categorical challenge has been addressed for the first time on appeal in the event that the appellant has invoked an exception to the general rule that issues cannot be raised for the first time on appeal. 298 Kan. 1075, Syl. ¶¶ 3, 4. However, Mays gives no reason as to why we should consider

24

this issue for the first time on appeal. Moreover, Mays did not raise this issue in either of his K.S.A. 60-1507 motions. In order to invoke an exception to the general rule that a party may not raise a constitutional issue for the first time on appeal, Kansas Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34) requires that the party affirmatively invoke and argue an exception. Failure to do so results in an abandonment of the issue. See *State v. Godfrey*, 301 Kan. 1041, Syl., 350 P.3d 1068 (2015). Mays fails to invoke or argue an exception as to why this issue should be raised for the first time on appeal. Under these circumstances, we conclude that this issue has been waived and abandoned.

CONCLUSION

In summary, we affirm the district court's decision on the issues of counsel's failure to challenge the constitutionality of K.S.A 21-3401, counsel's failure to challenge the legality of his confession, counsel's failure to object to the exclusion of ex-felons from the jury, counsel's failure to object to the State's alleged misstatements of law, counsel's failure to object to the jury instruction, and Mays' claims of ineffective assistance of appellate counsel. However, we reverse the district court's dismissal of the following claims of ineffective assistance of trial counsel without holding an evidentiary hearing:  (1) failure to assert a theory of self-defense; (2) failure to object to the admission of hearsay evidence; (3) and withdrawal of Mays' request for a mental evaluation prior to sentencing. Furthermore, we remand these issues to the district court for an evidentiary hearing.

Affirmed in part, reversed in part, and remanded with directions.